CALVIN E. DAVIS (SBN: 101640)
cdavis@grsm.com
CANDICE S. NAM (SBN: 293875)
cnam@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, California 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

PETER G. SIACHOS (*pro hac vice*)
psiachos@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900
Facsimile: (843) 804-4691

CLAIR E. WISCHUSEN (*pro hac vice*)
cwischusen@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Telephone: (202) 399-1009
Facsimile: (202) 800-2999

***Attorneys for Defendant, UNITS Franchising Group, Inc.***

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| So Cal Storage, LLC, a California limited liability company, Bay Area Storage, LLC, a California limited liability company, NIMA Group LLC, a California limited liability company, and TAJ Units Holdings, LLC, a Missouri limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>UNITS Franchising Group, Inc., a South Carolina corporation,<br><br>Defendant. | Case No. 2:25-cv-10222-WLH-BFM<br><br>**DEFENDANT UNITS FRANCHISING GROUP, INC.'S CORRECTED NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT (PREPARED IN PART USING ARTIFICIAL INTELLIGENCE)**<br><br>**[Fed. R. Civ. Proc. 12(b)(6)]**<br><br>Hearing Date: **October 2, 2026**<br>Hearing Time: **1:30 p.m.**<br>Hearing Dept: **Courtroom 9B** |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on Friday, October 2, 2026, at 1:30 p.m. in Courtroom 9B of the United States District Court for the Central District of California, located at 350 W 1st Street, Los Angeles, CA 90012-4565, the Honorable Wesley L. Hsu, judge presiding, Defendant UNITS Franchising Group, Inc. ("UFG") will and hereby does move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' First Amended Complaint ("FAC") in its entirety and without leave to amend.

The FAC lightly repackages the same theories this Court dismissed on July 9, 2026. It still aggregates four distinct franchisees, four Franchise Agreements executed over fourteen years, and different alleged transactions into allegations by undifferentiated "Plaintiffs." Its tort and statutory claims still do not identify the speaker, recipient, statement or omission, time, place, or transaction required by Rule 9(b). Its contract-based claims either disregard provisions that authorize the challenged conduct or offer only labels instead of facts showing a breach. Count VI reasserts the independent implied covenant claim the Court already held South Carolina law does not recognize. And Count VIII seeks restitution for long-distance-move activity within the parties' contractual franchise relationship while contradicting the original Complaint's allegation that the Franchise Agreements themselves promised Plaintiffs the revenue they now seek.

UFG therefore moves to dismiss: (1) all counts under Rules 8(a) and 9(b) because the FAC does not connect each Plaintiff to the facts supporting its own claim; (2) the fraud claims in Counts I and II because they do not plead an actionable post-sale misrepresentation or concealment with particularity and because the written disclosures and Franchise Agreements disclose or authorize the challenged matters; (3) the contract claims in Counts III and IV because the FAC does not plead facts showing misuse of the National Advertising Fund ("NAF") or a noncompetitive price

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

or unreasonable profit; (4) the contract accompanied by fraud claim in Count V because it alleges neither a viable underlying breach nor a separate fraudulent act; (5) Count VI because the implied covenant is not an independent claim and cannot create duties contrary to UFG's express contractual rights; (6) the California Franchise Investment Law claim in Count VII because the FAC still does not plead a materially false Franchise Disclosure Document ("FDD") statement or required omission, reliance, or causation with particularity; and (7) the unjust enrichment claim in Count VIII because an express contract governs the same subject matter and because Plaintiffs cannot manufacture a quasi-contract claim by contradicting their prior pleading.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such further argument and matters as may be offered at the time of the hearing on this Motion.

Pursuant to Local Rule 7-3 of the Central District of California, this Motion is made following the conference of counsel, which took place on August 13, 2026. (Declaration of Clair E. Wischusen)

Dated: August 22, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: *<u>/s/ Clair E. Wischusen</u>*
Calvin E. Davis
Candice S. Nam
Peter G. Siachos (*pro hac vice*)
Clair E. Wischusen (*pro hac vice*)
Attorneys for Defendant, UNITS Franchising Group, Inc.

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 9

II. RELEVANT BACKGROUND AND ALLEGATIONS .......... 11

A. Four Plaintiffs Entered Four Separate Franchise Agreements. .......... 11

B. The Court Dismissed Every Claim in the Original Complaint and Identified Specific Defects. .......... 13

C. The FAC Repleads the Same Theories Collectively and Adds Conclusions, Not Curative Facts .......... 14

III. LEGAL STANDARDS .......... 16

IV. ARGUMENT .......... 18

A. The FAC Still Treats Four Distinct Plaintiffs As One, Failing to Satisfy Rules 8 and 9(b) .......... 18

B. Counts I and II Do Not Plead Actionable Misrepresentation or Concealment .......... 20

C. Counts III and IV Do Not Plead a Breach of Any Franchise Agreement. .......... 21

1. Count III Does Not Plead Facts Showing a Prohibited NAF Expenditure. .......... 22

2. Count IV Does Not Plausibly Allege A Noncompetitive Price or Unreasonable Profit .......... 22

D. Count V Pleads Neither a Viable Breach Nor a Separate Fraudulent Act .......... 23

E. Count VI Reasserts an Independent Implied-Covenant Claim the Court Already Rejected .......... 24

F. Count VII Still Does Not State a CFIL Claim Under Section 31202. .......... 25

G. Count VIII Fails Because the Franchise Agreements Govern the Alleged LDM Benefit. ........ 27

H. Dismissal Should Be With Prejudice and Without Further Leave to Amend. ........ 29

V. CONCLUSION ........ 29

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. G.J. Creel & Sons, Inc.*,
320 S.C. 274, 465 S.E.2d 84 (1995) ........ 21, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 16, 17, 22, 23

*Bautista v. Los Angeles Cnty.*,
216 F.3d 837 (9th Cir. 2000) ........ 17, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 16

*Conner v. City of Forest Acres*,
348 S.C. 454, 560 S.E.2d 606 (2002) ........ 23

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ........ 29

*Edens v. Goodyear Tire & Rubber Co.*,
858 F.2d 198 (4th Cir. 1988) ........ 23

*Estate of Taylor v. John Alden Life Ins. Co.*,
574 F. Supp. 3d 347 (D.S.C. 2021) ........ 27

*Foman v. Davis*,
371 U.S. 178 (1962) ........ 29

*Full Tilt Boogie, LLC v. KEP Fortune, LLC*,
No. 2:19-cv-09090-ODW, 2022 WL 3018055 (C.D. Cal. July 29, 2022) ........ 14, 25

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) ........ 17, 18

*Hall v. UBS Fin. Servs. Inc.*,
435 S.C. 75, 866 S.E.2d 337 (2021) ........ 24

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........ 17

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 17

*Minter v. GOCT, Inc.*,
322 S.C. 525, 473 S.E.2d 67 (Ct. App. 1996) .......... 24

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) .......... 17, 18, 20, 25

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .......... 26

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) .......... 17

*RoTec Servs., Inc. v. Encompass Servs., Inc.*,
359 S.C. 467, 597 S.E.2d 881 (Ct. App. 2004) .......... 14, 24

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .......... 29

*Samica Enterprises, LLC v. Mail Boxes Etc. USA, Inc.*,
637 F. Supp. 2d 712 (C.D. Cal. 2008) .......... 26

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) .......... 18

*Smith v. Canal Ins. Co.*,
275 S.C. 256, 269 S.E.2d 348 (1980) .......... 23

*Smith v. Harr*,
No. 2:21-cv-03989-RMG, 2022 WL 1229019 (D.S.C. Apr. 25, 2022) .......... 23

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 17, 21

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 17, 20

*Thompson v. Killian*,
447 S.C. 177, 924 S.E.2d 606 (2025) .......... 27

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .... 17, 20

*WRH Mortg., Inc. v. S.A.S. Assocs.*,
214 F.3d 528 (4th Cir. 2000) .... 27

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .... 29

**Other Authorities**

Cal. Corp. Code § 31202 .... 14, 25, 26

**Rules**

Fed. R. Civ. P. 8(a)(2) .... 17

**Treatises**

16 C.F.R. § 436.5(h) .... 26

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Court dismissed every claim in the original Complaint, identified the deficiencies in Plaintiffs' allegations, and permitted amendment to "correct[] the pleading deficiencies noted" in its Order. Order at 25, ECF No. 52. The FAC does not cure those deficiencies. It repackages the same essential theories with revised phrasing and additional conclusions. Four independent franchisees still seek to characterize conduct disclosed or authorized by four separate written agreements as fraud, breach, and statutory violations, without identifying which Plaintiff experienced which conduct, when, or under which agreement.

That threshold defect pervades the FAC. Although the FAC now identifies the FDD year associated with each Plaintiff, it otherwise relies on blanket allegations that "Plaintiffs" or "each Plaintiff" relied on alleged misrepresentations and omissions, made purchases at inflated prices, requested alternative suppliers, received post-sale representations, discovered concealed facts, generated LDM leads, or suffered losses. *E.g.*, FAC ¶¶ 40–43, 47–48, 51–54, 60–64, 70–75, 82–88. Those collective formulations leave UFG and the Court to determine which Plaintiff asserts which claim. Its fraud theories are even less specific, failing to identify the speaker, recipient, timing, substance, transaction, or reliance associated with any particular Plaintiff. That is insufficient under Rules 8 and 9(b).

The added allegations also undermine rather than rescue the claims. The FAC acknowledges that the FDDs disclosed UFG's revenue from required purchases and its right to retain vendor rebates, markups, and other benefits. *Id.* ¶¶ 34, 37. It also quotes agreements authorizing UFG to require purchases from approved suppliers and earn a reasonable profit. *Id.* ¶¶ 44–46. Those admissions defeat the core concealment theory, while the remaining purchasing, pricing, and advertising allegations offer conclusions rather than facts showing that UFG violated any applicable agreement.

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

The FAC also doubles down on theories this Court already rejected. Count VI again tries to turn the implied covenant into an independent cause of action, even though the Court held that South Carolina law recognizes no such independent claim and that the covenant cannot contradict express contractual terms. Order at 22–23. The FAC's additional allegations likewise do not alter the Court's construction of Section 11.5 as imposing obligations on Plaintiffs rather than guaranteeing functionality or support by UFG. *Id.* at 20–21. Count VII likewise remains deficient under Rule 9(b), despite the Court's specific guidance regarding the original CFIL claim. *Id.* at 24–25. Although the FAC now identifies four FDD years, it still does not connect any allegedly false required disclosure or omission, reliance, or resulting loss to a particular Plaintiff. FAC ¶¶ 23–26, 131–143.

Finally, Count VIII attempts to avoid dismissal by abandoning the contractual premise of Plaintiffs' original LDM theory. The original Complaint alleged that UFG represented at Discovery Day that franchisees would receive all revenue from local and long-distance delivery charges. Compl. ¶ 18, ECF No. 1. It further alleged that this representation was "consistent with the terms of the Franchise Agreements," which "likewise contemplate[d]" that UFG would remit customer payments for LDM services to the applicable franchisee, less costs and expenses. *Id.* The Court accordingly understood Plaintiffs to allege that UFG "represented within the Franchise Agreements" that Plaintiffs would receive LDM revenue after costs and expenses. Order at 4, ECF No. 52. The FAC now adopts the opposite contractual premise for the 2008, 2019, and 2020 Agreements, alleging that they do not contain any provision addressing Long-Distance Moving and that UFG's receipt of LDM leads is "governed by no contract term." FAC ¶ 85. As to So Cal, the FAC alleges that no separate LDM addendum was executed and that Section 12.15 therefore did not authorize UFG to take So Cal's leads without compensation. *Id.* ¶ 86. Count VIII then relies on that new premise to seek quasi-contractual restitution. *Id.* ¶¶ 144–149.

Plaintiffs cannot avoid the contractual bar to unjust enrichment simply by changing their characterization of the same agreements.

Plaintiffs have already received an opportunity to amend with the benefit of the Court's specific guidance. Their continued failure to state viable claims confirms that further amendment would serve no purpose. Dismissal of all eight counts with prejudice is therefore warranted.

## II. RELEVANT BACKGROUND AND ALLEGATIONS

### A. Four Plaintiffs Entered Four Separate Franchise Agreements.

UFG franchises portable-storage businesses under its proprietary UNITS system. FAC ¶ 11. Plaintiffs are four independent entities that entered the system at different times: NIMA in 2008, Bay Area in 2019, TAJ in 2020, and So Cal in 2022. *Id.* ¶¶ 7–10. Each executed its own Franchise Agreement, and each agreement is attached to the FAC. *Id.* ¶¶ 7–10 & n. 1; Ex. A, ECF No. 55-1. The agreements select South Carolina law for common law disputes. Order at 8–10.

The Franchise Agreements define the parties' franchise relationship and allocate the rights now at issue. Among other things, they authorize UFG to modify the UNITS System and require franchisees to adopt designated software and equipment; require purchases from UFG or approved suppliers; permit UFG and its affiliates to retain rebates, markups, and other vendor benefits; give UFG discretion over supplier approval; allow UFG to earn a reasonable profit on UNITS Equipment and Products; prescribe local and national advertising obligations; and disclaim any guarantee that National Advertising Fund expenditures will benefit each franchisee proportionately. *See, e.g.*, FAC Ex. A, 2008 Agreement §§ 10.2, 11.2–11.3.1, 12.5, 13.1–13.2; 2019 Agreement §§ 9.2, 10.2–10.3.1, 11.5, 12.1–12.2; 2020 Agreement §§ 9.2, 10.2–10.3.1, 11.5, 12.1–12.2; 2022 Agreement §§ 9.2, 10.2–10.3.1, 11.5, 12.1–12.2.

The Franchise Agreements also place transportation between locations within the parties' contractual relationship. Each describes the UNITS System as



GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

encompassing the transportation of containers "from one location to another," and each authorizes UFG to modify that System while requiring the franchisee to accept and use System changes. FAC Ex. A, 2008 Agreement at 1 & § 10.2; 2019 Agreement at 2 & § 9.2; 2020 Agreement at 2 & § 9.2; 2022 Agreement at 2 & § 9.2. Each Agreement also reserves UFG's right to sell services authorized for UNITS Businesses through alternate channels. *Id.*, 2008 Agreement § 2.5; 2019 Agreement § 1.5.3; 2020 Agreement § 1.5.3; 2022 Agreement § 1.5.3. The 2019, 2020, and 2022 Agreements further provide that the franchisee has no right to distribute those services or share in the proceeds from UFG's reserved activities. *Id.*, 2019 Agreement § 1.5.5; 2020 Agreement § 1.5.5; 2022 Agreement § 1.5.5.

The 2022 Agreement addresses LDM still more expressly. It defines long-distance moves as moves between two UNITS territories, designates UFG as the sole approved LDM provider, authorizes UFG to require So Cal to use UFG or its designees, permits UFG to establish and collect its rates, and gives UFG the sole right to prescribe the program's parameters. *Id.*, 2022 Agreement at 2 & §§ 1.4, 1.5.3–1.5.5, 12.15. It also permits UFG to collect customer payments directly and remit any payment to So Cal after deducting the fees, costs, and expenses associated with the services provided. *Id.* § 12.15.

Despite these provisions, the FAC now alleges that the 2008, 2019, and 2020 Agreements do not contain any provision addressing Long-Distance Moving and that UFG's receipt of LDM leads is therefore "governed by no contract term." FAC ¶ 85. It similarly contends that the 2022 Agreement does not govern So Cal's participation because the parties did not execute a separate LDM addendum. *Id.* ¶ 86. That position cannot be reconciled with Plaintiffs' original allegation that the Franchise Agreements contemplated UFG's collection of LDM payments and remittance of those payments to franchisees after deducting costs and expenses. Compl. ¶ 18, ECF No. 1; *see* Order at 4, ECF No. 52.

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

### B. The Court Dismissed Every Claim in the Original Complaint and Identified Specific Defects.

Plaintiffs filed their original Complaint on October 24, 2025. ECF No. 1. They collectively alleged fraudulent presale and post-sale statements about the UNITS system, LDM revenue, software, purchasing, and Item 19 disclosures; contract breaches concerning software and advertising; breach of the implied covenant; specific performance; violations of the California Franchise Investment Law ("CFIL") and Unfair Competition Law; and declaratory relief. Compl. ¶¶ 15–113.

On July 9, 2026, the Court dismissed the Complaint in full. Order at 25. The Court first held that South Carolina law governs the common law claims, while California law governs the California statutory claims. *Id.* at 8–10. It then held that the CFIL preempted Counts I and II to the extent they rested on the same categories of presale statements or omissions regulated by that statute, including the proprietary system, LDM revenue, proprietary software, and Item 19. *Id.* at 13–16. The Court emphasized that the Complaint "fail[ed] to draw any distinction between the oral and written misrepresentation[s]" or otherwise separate alleged post-sale conduct from CFIL-regulated disclosures. *Id.* at 15–16.

The contract claims failed on the written terms. The Court held that "[t]he plain language of section 11.5 . . . does not create a guarantee for functionality nor support." *Id.* at 20. Instead, Section 11.5 "expressly creates obligations imposed on Plaintiffs, not on Defendant." *Id.* at 21. Other general provisions could not supply the missing promise. *Id.* The NAF theory likewise failed because the Complaint did not identify a specific contractual provision UFG allegedly breached. *Id.* at 21–22.

The Court also rejected Plaintiffs' attempt to plead the implied covenant as its own count. The Court explained that the implied covenant "may not be relied on to create new contractual duties not expressly stated or fairly implied in the contract itself." Order at 22 (quoting *Road, LLC v. Beaufort County*, 902 S.E.2d 366, 372 (S.C. 2024)). More fundamentally, the Court held that "the implied covenant is not

an independent cause of action separate from a claim for breach of contract." *Id.* at 22–23 (quoting *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 473, 597 S.E.2d 881, 884 (Ct. App. 2004)). It dismissed that count as subsumed in contract. *Id.* at 23.

Finally, the Court dismissed the CFIL claim under Rule 9(b). Section 31202 requires facts amounting to common-law fraud, including a materially false required disclosure or omission, reasonable reliance, and causation. *Id.* at 24 (citing *Full Tilt Boogie, LLC v. KEP Fortune, LLC*, No. 2:19-cv-09090-ODW (MAAx), 2022 WL 3018055, at *11 (C.D. Cal. July 29, 2022)). The Complaint did not specify which FDD each Plaintiff received and relied on or the timing of that reliance. Order at 24–25. The Court gave Plaintiffs twenty-one days to file an amended complaint "that corrects the pleading deficiencies noted herein." *Id.* at 25. At Plaintiffs' request, UFG agreed to extend that deadline by an additional week, giving Plaintiffs further time to attempt to cure the deficiencies the Court had identified. Stipulation at 2, ECF No. 54. The FAC nevertheless fails to cure them.

### C. The FAC Repleads the Same Theories Collectively and Adds Conclusions, Not Curative Facts.

The FAC, filed August 7, 2026, asserts eight counts: fraud, negligent misrepresentation, two contract claims, "breach of contract accompanied by a fraudulent act," breach of the duty of reasonableness and good faith, CFIL, and unjust enrichment. FAC ¶¶ 91–149. Its factual section still speaks almost entirely of "Plaintiffs," notwithstanding the four agreements and different alleged experiences. *E.g.*, *id.* ¶¶ 22–26, 40–43, 47, 51–54, 60–64, 83–88.

For purchasing, the FAC alleges that the FDDs described the UNITS system, containers, and related equipment as proprietary and identified UFG as the only approved supplier of UNITS containers. *Id.* ¶¶ 22–33. At the same time, it acknowledges that the FDDs quantified the revenue UFG derived from required purchases and disclosed UFG's right to retain volume rebates, markups, and other



GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

benefits. *Id.* ¶¶ 34, 37. The FAC alleges, "on information and belief," that the quantified amounts understated UFG's revenue and further asserts that UFG should have disclosed the equipment manufacturers, the basis for vendor payments, and additional vendor and lender relationships. *Id.* ¶¶ 36–38. Although the FAC now assigns a particular FDD year to each Plaintiff, it continues to plead the alleged concealment, supplier requests, communications, purchases, and reliance collectively. *Id.* ¶¶ 23–26, 40–43, 52–54, 60–64. It does not identify which Plaintiff made which request or purchase; what Lorensen or any regional developer said, to whom, or when; or any particular transaction showing that UFG received revenue, a rebate, a markup, or another benefit inconsistent with the disclosures in the applicable FDD.

For pricing, the FAC quotes contract provisions allowing UFG to require exclusive purchases, requiring competitive pricing, and allowing a reasonable profit. *Id.* ¶¶ 44–46. The FAC offers only one purported price comparison: "one Plaintiff" could have purchased "identical" containers directly from Boxwell for $800 less. *Id.* ¶ 48. It does not identify that Plaintiff, a date, quantity, freight term, warranty, financing, delivery location, volume tier, or completed UFG transaction.

For the NAF, the FAC identifies Sections 10.3.1 and 11.3.1 and alleges that a 2024 income statement listed $530,861 in "corporate salaries," along with unspecified conference and NASCAR expenses. Id. ¶¶ 76–81. It supplies no facts about the employees' duties or the purpose, amount, or date of the other expenditures, and it does not account for the 2022 Agreement's express salary authorization. *Id.*; FAC Ex. A, 2022 Agreement § 10.3.1.

For software, the FAC still does not supply the contractual obligation that the Court found missing. The Court held that the software-fee provision requires Plaintiffs to purchase UFG's designated system and pay the associated fee, but does not obligate UFG to guarantee functionality or support. Order at 19–21. The Court also rejected Plaintiffs' reliance on general references to "support" appearing in

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

restrictive-covenant and jurisdiction provisions that do not govern software. *Id.* at 20–21. The FAC now relies on the same software-fee language for NIMA, Bay Area, and TAJ, while acknowledging that the 2022 Agreement omits "support" altogether and inferring an obligation from So Cal's payment of the same fee. FAC ¶ 65. It attempts to fill the remaining gap with provisions concerning general operational guidance and UFG's authority to modify the System, neither of which promises functional software or technical support. *Id.* ¶¶ 66–67. The FAC then describes the StoreSmart rollout largely through collective allegations, quantifies a loss only for TAJ, and repackages the theory as an independent good-faith claim for all Plaintiffs. *Id.* ¶¶ 68–75, 122–130.

For LDM services, the FAC alleges that Plaintiffs' paid advertising generated customer inquiries that UFG required them to route to UFG, which then serviced the moves, collected the revenue, and paid Plaintiffs nothing for the leads. FAC ¶¶ 82–84. It then advances a new premise: the 2008, 2019, and 2020 Agreements contain no LDM terms, and Section 12.15 does not apply to So Cal because it never signed an LDM addendum. *Id.* ¶¶ 85–86. That reverses the original theory. The original Complaint alleged that the Franchise Agreements contemplated UFG's collection of LDM payments and remittance of those payments to Plaintiffs after costs, Compl. ¶ 18, while its CFIL claim alleged that UFG "misrepresented the revenue allocation for long-distance moves," *id.* ¶ 102(e). Count VIII now seeks restitution on the opposite premise that no contract governs the same LDM services and revenue. FAC ¶¶ 144–149.

## III. <u>LEGAL STANDARDS</u>

To survive Rule 12(b)(6), a complaint must plead enough nonconclusory facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 570 (2007). The Court accepts well-pleaded facts, not labels, legal conclusions, or an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A claim is

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

implausible when the pleaded facts are "merely consistent with" liability or when documents incorporated into the complaint contradict it. *Id.*; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Rule 8 requires a short and plain statement identifying the grounds for each plaintiff's entitlement to relief. Fed. R. Civ. P. 8(a)(2). A complaint violates Rule 8 when it fails to tie alleged facts to particular parties and claims, leaving the defendant and court to reconstruct the pleading. *Gibson v. City of Portland*, 165 F.4th 1265, 1288–94 (9th Cir. 2026). Each plaintiff must plead its own claim arising from its own transaction. *See Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840–41 (9th Cir. 2000).

Fraud allegations must also satisfy Rule 9(b) by stating the "who, what, when, where, and how" of the misconduct and what was false or misleading about it. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106–07 (9th Cir. 2003). Group allegations do not suffice; a complaint must identify each participant's role and, in a multi-plaintiff action, which plaintiff received and relied on which representation. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (per curiam); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) applies to averments of fraudulent concealment and to claims sounding in fraud, regardless of their label. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009); *Vess*, 317 F.3d at 1103–05.

The Court may consider the FAC's attached agreements and incorporated FDD allegations under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). However, the Court need not accept allegations contradicted by attached exhibits. *Sprewell*, 266 F.3d at 988. And although amendment may add detail, a plaintiff may not evade dismissal by alleging facts that directly contradict the prior pleading without explanation. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990).

## IV. ARGUMENT

### A. The FAC Still Treats Four Distinct Plaintiffs As One, Failing to Satisfy Rules 8 and 9(b)

The FAC's collective pleading infects every count. Plaintiffs are four separate entities that entered into four separate agreements over a fourteen year period. They received different FDDs, operated in different places, made different purchases, communicated with different people, and allegedly suffered different losses. Yet the FAC substitutes the collective "Plaintiffs" for facts showing who has a claim.

The Ninth Circuit recently confirmed that this form of shotgun pleading violates Rule 8. A complaint must "tether" the facts to the particular causes of action and parties; it is not the court's job to guess how untethered allegations combine into a claim. *Gibson*, 165 F.4th at 1288–94. Where "[a]ll details evaporate" at the point of linking facts to causes of action, dismissal is required. *Id.* at 1291. Likewise, a multi-plaintiff complaint must identify each plaintiff's own transaction and legal theory. *Bautista*, 216 F.3d at 840–41. And when fraud is alleged, it must specify which plaintiff received and acted on which statement. *Moore*, 885 F.2d at 540; *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558–59 (9th Cir. 2010).

The FAC does not. Its FDD allegations shift without notice among four documents, quoting the 2019 version and declaring the others "identical" or "materially the same." FAC ¶¶ 23–26. It alleges that "Plaintiffs" relied on the supposed proprietary nature of the system, *id.* ¶¶ 40–43, but not who read what, when, or before which purchase. It alleges "Plaintiffs" requested alternate suppliers and were denied, *id.* ¶¶ 49–51, but not which Plaintiff, supplier, item, request, response, or governing agreement. It says Erik Lorensen and unidentified regional developers spoke "throughout" the relationship, *id.* ¶¶ 52–54, but supplies no recipient, date, place, words, or transaction. It claims "Plaintiffs" recently learned of manufacturers and pricing, *id.* ¶¶ 60–64, without identifying who learned what or how. It alleges LDM lead diversion and retaliation collectively, while conceding that only "at least

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

one Plaintiff" allegedly received a rebate. *Id.* ¶¶ 83–88, 127(f).

Counts I, II, V, and VII compound the Rule 8 problem because they sound in fraud. Rule 9(b) requires Plaintiffs to plead the "who, what, when, where, and how" of the alleged misconduct and to explain what was false or misleading and why. *Vess*, 317 F.3d at 1106–07. It also prohibits undifferentiated group pleading: where multiple defendants allegedly participated in a fraudulent scheme, the complaint must differentiate among them and identify, at a minimum, each defendant's role. *Swartz*, 476 F.3d at 764–65. Nor may Plaintiffs avoid Rule 9(b) by characterizing their fraud theory as concealment or nondisclosure. When nondisclosure is alleged as part of a unified fraudulent course of conduct, it must be pleaded with particularity, and general allegations of an intent to conceal are insufficient. *Kearns*, 567 F.3d at 1126–27. The FAC's generalized references to events occurring "throughout" the parties' relationships or "recently," its allegations made "on information and belief," and its collective references to "Plaintiffs" do not themselves supply the missing details concerning who engaged in or received each communication, what was said or concealed, when and where it occurred, why it was false or misleading, and how it caused reliance and loss. The FAC alleges none of those matters Plaintiff by Plaintiff. The contract and restitution counts are no better. Count III identifies corresponding NAF provisions but does not identify which Plaintiff's contribution funded which challenged expense or allege a Plaintiff-specific breach and resulting damage. FAC ¶¶ 76–81, 105–108. Count IV does not identify the "one Plaintiff" behind its sole price comparison. *Id.* ¶ 48. Count VI combines software, NAF, purchasing, LDM, territory, and rebate theories under a collective covenant theory already rejected. *Id.* ¶¶ 122–130. Count VIII seeks all Plaintiffs' LDM revenue without identifying any lead, customer, move, payment, expense, agreement, or amount. *Id.* ¶¶ 144–149.

This is not a technical objection. The aggregation obscures substantive differences and prevents UFG from knowing which conduct it must defend. Because every count depends on undifferentiated allegations, the FAC should be dismissed in

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

full under Rule 8. The fraud-based counts independently require dismissal under Rule 9(b).

**B. <u>Counts I and II Do Not Plead Actionable Misrepresentation or Concealment.</u>**

Counts I and II seek to transform the parties' disclosed purchasing arrangements into claims for post-sale fraud and negligent misrepresentation. FAC ¶¶ 91–104. The theories fail for three independent reasons.

First, they lack particulars. Count I alleges that UFG concealed that equipment was standard and widely available, that other manufacturers existed, and that UFG earned undisclosed compensation. *Id.* ¶¶ 92–95. Count II adds unidentified "officers and regional developers." *Id.* ¶ 101. Neither count identifies a Plaintiff, speaker, recipient, date, communication, purchase, or the particular false statement. Incorporating collective allegations does not supply those details. *See Moore*, 885 F.2d at 540; *Swartz*, 476 F.3d at 764–65. Because negligent misrepresentation is premised on the same allegedly fraudulent course of conduct, Rule 9(b) applies to it as well. *Vess*, 317 F.3d at 1103–05.

Second, the FAC does not plausibly allege falsity or a duty to disclose. Calling a franchise system or its designated products "proprietary" does not represent that every component is patented, manufactured only for UFG, or unavailable from any third party. The FDD allegations describe a proprietary system and required products, not a promise that UFG owns every upstream factory. FAC ¶¶ 22–33. The written agreements expressly contemplate UFG-approved third-party suppliers, give UFG discretion over approval, and disclose that UFG and its affiliates may retain "rebates, markups and other benefits" from franchisee purchases in which the franchisee has no interest. *See, e.g.*, FAC Ex. A, 2008 Agreement § 13.1; 2019 Agreement § 12.1; 2020 Agreement § 12.1; 2022 Agreement § 12.1. The FAC further admits that the FDDs quantified UFG's revenue from required purchases and reserved the right to retain vendor benefits. FAC ¶¶ 34, 37. A disclosed business structure is not actionable

concealment merely because Plaintiffs wish the disclosures had included more detail.

Third, the agreements contradict the alleged concealment and any contrary understanding. They require designated purchases, permit retained vendor benefits, and allow UFG a reasonable profit. FAC ¶¶ 44–46 & Ex. A §§ 12.1–12.2 (2019, 2020, 2022); *id.* §§ 13.1–13.2 (2008). Plaintiffs identify no post-sale statement that negates those disclosures, and the Court need not accept allegations contradicted by exhibits or other documents properly incorporated into the FAC. *Sprewell*, 266 F.3d at 988. South Carolina law likewise does not turn the exercise of an express contractual right into a breach. *See Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277–78, 465 S.E.2d 84, 85–86 (1995).

Counts I and II also incorporate the FAC's presale FDD and reliance allegations and repeat Item 8's statement that there were "no alternate sources of supply." FAC ¶¶ 91, 94, 100–101. To the extent these claims rest on that or any other offer-and-sale disclosure, the Court's prior CFIL preemption ruling controls. Order at 13–16. Plaintiffs cannot avoid that ruling by alleging, without identifying a later speaker, recipient, date, or communication, that the same statement was repeated "during the relationship." Counts I and II should be dismissed.

### C. Counts III and IV Do Not Plead a Breach of Any Franchise Agreement.

Under South Carolina law, a breach-of-contract claim requires a binding contract, breach of a duty imposed by that contract, and resulting damages. *See Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89–90, 124 S.E.2d 602, 610 (1962). At the pleading stage, a plaintiff must identify the specific contractual provision allegedly breached and explain how defendant's conduct violated it. *See Glob. State Inv. USA, Inc. v. LAS Props., LLC*, 2015 WL 1943370, at *10 (D.S.C. Apr. 29, 2015). Conduct expressly authorized by the contract cannot constitute a breach. *Adams*, 320 S.C. at 277–78, 465 S.E.2d at 85–86.

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**1. Count III Does Not Plead Facts Showing a Prohibited NAF Expenditure.**

Count III invokes Sections 10.3.1 and 11.3.1, which generally permit UFG to use NAF contributions for advertising programs and reasonable administrative costs, disclaim any obligation to benefit each franchisee in proportion to its contribution, and bar use for UFG's general operating expenses except permitted administration. FAC ¶¶ 76–81, 105–108. The 2022 Agreement goes further: it expressly permits "the salaries of employees who manage marketing agencies, administer the National Advertising Fund, or directly create marketing materials or tools ." FAC Ex. A, 2022 Agreement § 10.3.1.

The FAC alleges only that a 2024 statement listed $530,861 as "corporate salaries" and concludes that the salaries do not constitute administrative expenses and were not paid to employees performing marketing-related functions. FAC ¶¶ 79–80. That is a conclusion, not a fact. It identifies no employee, role, duty, payroll allocation, general operating function, or basis for inferring that the salary expense fell outside permitted NAF administration or marketing. The label "corporate" does not plausibly establish misuse, especially for So Cal, whose agreement expressly permits relevant salaries.

The remaining assertions are even thinner. The FAC references franchise conferences and NASCAR-related events without any date, recipient, purpose, amount, or explanation why they were not advertising, brand promotion, or NAF administration. *Id.* ¶ 81. It does not identify which Plaintiff's agreement was breached or any resulting Plaintiff-specific damage. Because the pleaded facts are equally or more consistent with permitted NAF spending, they do not cross the line from possibility to plausibility. *See Iqbal*, 556 U.S. at 678. Count III should be dismissed.

**2. Count IV Does Not Plausibly Allege A Noncompetitive Price or Unreasonable Profit.**

Count IV relies on provisions stating that UFG will provide UNITS Equipment

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

and Products at competitive prices and may earn a reasonable profit on their sale. FAC ¶¶ 44–48, 109–113. The FAC's only factual support is that an unnamed Plaintiff allegedly could have purchased "identical" Boxwell containers for $800 less per container. *Id.* ¶ 48. It does not allege when, in what quantity, on what payment and delivery terms, with what freight, warranty, specifications, financing, volume commitment, or service package. Nor does it allege the UFG price, UFG's cost, the resulting margin, or facts showing the two transactions were comparable. "Competitive" does not mean the lowest price available from any seller on unidentified terms, and permission to earn a reasonable profit necessarily contemplates some markup.

The remaining allegations merely repeat the contractual standard: UFG's pricing was "not competitive" and its profit was "unreasonable." *Id.* ¶¶ 47, 111. Reciting an element without supporting facts is insufficient. *Iqbal*, 556 U.S. at 678–79. The claim is also impermissibly collective: it withholds which Plaintiff received which quote and which agreement or purchase is at issue. Count IV should be dismissed.

**D. <u>Count V Pleads Neither a Viable Breach Nor a Separate Fraudulent Act.</u>**

South Carolina's "breach of contract accompanied by a fraudulent act" doctrine is a basis for punitive damages, not a free-standing substitute for a defective contract claim. *Smith v. Canal Ins. Co.*, 275 S.C. 256, 259, 269 S.E.2d 348, 350 (1980). It requires (1) a breach, (2) fraudulent intent relating to the breach, and (3) a fraudulent act accompanying, but separate and distinct from, the breach. *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 202-03 (4th Cir. 1988); *Conner v. City of Forest Acres*, 348 S.C. 454, 465-66, 560 S.E.2d 606, 612 (2002). A complaint sounding in fraud must plead the separate act under Rule 9(b). *Smith v. Harr*, No. 2:21-cv-03989-RMG, 2022 WL 1229019, at *4-5 (D.S.C. Apr. 25, 2022).

Count V fails at every step. Its underlying breach is the same deficient purchasing-pricing theory in Count IV. FAC ¶¶ 114–121. The supposed

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

accompanying act is UFG's alleged concealment of the true source, price, and markup of products. *Id.* ¶ 120. But the FAC admits that the FDDs and agreements disclosed required purchasing, purchasing revenue, retained rebates and markups, and UFG's right to a reasonable profit. *Id.* ¶¶ 34, 37, 44–46. It does not identify any separate affirmative act, much less the who, what, when, where, and how of one. Relabeling the same alleged nondisclosure both breach and fraud does not satisfy the distinct-act element. *See Minter v. GOCT, Inc.*, 322 S.C. 525, 530, 473 S.E.2d 67, 70 (Ct. App. 1996). Count V should be dismissed.

**E. <u>Count VI Reasserts an Independent Implied-Covenant Claim the Court Already Rejected.</u>**

Count VI should be dismissed for the reason the Court already stated: under South Carolina law, "[t]he implied covenant is not an independent cause of action separate from a claim for breach of contract." Order at 22–23 (quoting *RoTec*, 359 S.C. at 473, 597 S.E.2d at 884); *see also Hall v. UBS Fin. Servs. Inc.*, 435 S.C. 75, 86, 866 S.E.2d 337, 342 (2021) (explaining that a claim for breach of the implied covenant "is simply one for breach of contract"). The covenant governs the manner of performing existing duties; it cannot create duties contrary to the terms of a contract. *Road*, 443 S.C. at 24, 902 S.E.2d at 372. Plaintiffs replead the count anyway and again attempt to use it to impose obligations the agreements do not contain. FAC ¶¶ 122–130.

The individual theories also fail on their own terms. The Court already held that Section 11.5 contains no functionality or support guarantee and imposes obligations on Plaintiffs, not UFG. Order at 20–21. Count VI cannot use good faith to create the very software duty the Court held absent. The agreements authorize UFG to modify the system, require designated software and equipment, approve or reject suppliers, retain vendor benefits, and earn a reasonable profit. *See* FAC Ex. A, 2008 Agreement §§ 10.2, 12.5, 13.1–13.2; 2019 and 2020 Agreements §§ 9.2, 11.5, 12.1–12.2; 2022 Agreement §§ 9.2, 11.5, 12.1–12.2. Exercising those rights cannot

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

become a breach through the implied covenant. *Adams*, 320 S.C. at 277–78, 465 S.E.2d at 85–86.

Nor does Count VI plausibly plead an improper exercise of discretion. Its NAF and pricing assertions are conclusory for the reasons above. Its LDM, protected-territory, and rebate allegations do not identify a Plaintiff, transaction, customer, territory, competitor, or withheld amount. FAC ¶¶ 83–88, 127(e)–(f). So Cal's Agreement expressly reserves UFG's rights concerning national and LDM services, authorizes UFG to set parameters and charges, collect customer payments, and remit amounts less fees, costs, and expenses. FAC Ex. A, 2022 Agreement §§ 1.4–1.5, 12.15. The earlier agreements likewise allocate system, advertising, purchasing, and territory rights; the covenant cannot rewrite those allocations.

Plaintiffs had the Court's precise holding and nevertheless reasserted the same standalone count. It should now be dismissed with prejudice.

**F. <u>Count VII Still Does Not State a CFIL Claim Under Section 31202.</u>**

Section 31202 makes it unlawful willfully to make an untrue statement of material fact in a document required to be filed with the Commissioner or willfully to omit a material fact required to be stated there. Cal. Corp. Code § 31202. A private damages claim requires a materially false required statement or omission, reasonable reliance, and causation. Order at 24–25; *Full Tilt Boogie*, 2022 WL 3018055, at *11.

The FAC does not cure the defect the Court identified. It now lists the years of four FDDs, but quotes principally the 2019 FDD and says the others are "identical" or "materially the same." FAC ¶¶ 23–26. It then alleges only that "each Plaintiff" received and relied on its FDD, without the date of receipt, the person who reviewed it, the particular words relied on, the decision supposedly caused, or the resulting purchase and loss. *Id.* ¶ 135. That is still collective pleading, not Rule 9(b) particularity.

The alleged misstatements and omissions are also not actionable. Item 1's description of a proprietary franchise system and Item 8's identification of required

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

sources do not represent that UFG manufactures every product or that no product component can be sourced elsewhere. FAC ¶¶ 22–33. Item 8 expressly concerns restrictions on sources and the franchisor's revenue or benefits from required purchases. *See* 16 C.F.R. § 436.5(h). The FAC admits the FDDs disclosed both: they identified required purchasing, quantified UFG's revenue, and stated that UFG could retain rebates, markups, and other benefits. FAC ¶¶ 34, 37. Section 31202 does not impose a free-ranging duty to disclose every fact a franchisee later wishes it had known; it prohibits only a willfully untrue statement of material fact in a written statement required under Section 31101 or the willful omission of a material fact required to be stated in such a statement. Cal. Corp. Code § 31202*; see also Full Tilt Boogie*, 2022 WL 3018055, at *11.

Item 10 fares no better. The FAC itself alleges that the FDDs stated UFG did not offer direct or indirect financing. FAC ¶ 35. It speculates "on information and belief" that UFG had undisclosed arrangements with Live Oak Bank or vendors, but pleads no financing offered to any Plaintiff, no terms, no payment to UFG, no date, no source for the belief, and no facts making the disclosed statement false. *Id.* ¶¶ 36, 38. Rule 9(b) permits information-and-belief pleading only when the facts are peculiarly within a defendant's knowledge and the complaint states the factual basis for the belief; the FAC does not. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Nor is reasonable reliance plausibly alleged. The agreements executed with the FDD process expressly disclosed UFG-approved suppliers, retained benefits and markups, and a reasonable profit. *See* FAC Ex. A §§ 12.1–12.2 (2019, 2020, 2022); *id.* §§ 13.1–13.2 (2008). Plaintiffs do not identify any contrary FDD sentence. Courts reject a franchise-fraud theory where the written disclosure supplies the very information allegedly concealed. *See Samica Enterprises, LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712, 726–27 (C.D. Cal. 2008). Count VII should be dismissed.

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

### G. Count VIII Fails Because the Franchise Agreements Govern the Alleged LDM Benefit.

Unjust enrichment is an implied contract remedy available only when no enforceable express contract governs the same subject matter or the alleged harm falls outside the contract's scope. *Thompson v. Killian*, 447 S.C. 177, 193, 924 S.E.2d 606, 614 (2025). An express contract bars restitution when it governs the parties' relationship and the disputed benefit, even if the plaintiff contends that the defendant relied on requirements not expressly contained in the contract. *See WRH Mortg., Inc. v. S.A.S. Assocs.*, 214 F.3d 528, 534–35 (4th Cir. 2000); *Estate of Taylor v. John Alden Life Ins. Co.*, 574 F. Supp. 3d 347, 357 (D.S.C. 2021).

Count VIII attempts precisely that. Plaintiffs allege that their contractually required local advertising generated customer inquiries, that those inquiries concerned moves between UNITS territories, and that UFG serviced the resulting moves and retained the revenue. FAC ¶¶ 82–86, 144–149. They try to isolate the inquiries as supposedly extra-contractual "leads," but those leads arose through Plaintiffs' operation of UNITS businesses, use of the UNITS System and Marks, advertising within assigned territories, and provision of transportation services. Those matters lie at the center of the franchise relationship. Indeed, Plaintiffs' own covenant claim treats UFG's alleged LDM and protected-territory conduct as a contractual breach. *Id.* ¶ 127(e)–(f). Plaintiffs cannot treat that conduct as contractual in one count and outside the contracts in another.

The agreements themselves foreclose the FAC's contrary premise. Each defines the UNITS System as encompassing the transportation of containers "from one location to another," and each authorizes UFG to modify that System while requiring the franchisee to accept and implement System changes. FAC Ex. A, 2008 Agreement at 1 & §§ 10.1–10.2; 2019 Agreement at 2 & §§ 9.1–9.2; 2020 Agreement at 2 & §§ 9.1–9.2; 2022 Agreement at 2 & §§ 9.1–9.2. The 2008, 2019, and 2020 Agreements also reserve UFG's right to sell services authorized for UNITS

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

businesses through alternate channels. *Id.*, 2008 Agreement § 2.5; 2019 Agreement §§ 1.5.3–1.5.5; 2020 Agreement §§ 1.5.3–1.5.5. The 2019 and 2020 Agreements go further, expressly providing that the franchisee has no right to distribute those services or share in the proceeds from UFG's reserved activities. *Id.*, 2019 Agreement § 1.5.5; 2020 Agreement § 1.5.5. The absence of a provision promising compensation for each routed lead does not remove the underlying transportation services and revenue from the agreements' subject matter.

The 2022 Agreement addresses LDM even more expressly. It defines long-distance moves as moves between two UNITS territories, designates UFG as the sole approved LDM provider, authorizes UFG to require So Cal to use UFG or its designees, permits UFG to establish and collect its rates, and gives UFG the sole right to prescribe the program's parameters. *Id.*, 2022 Agreement at 2 & §§ 1.4, 1.5.3–1.5.5, 12.15. Section 12.15 also permits UFG to collect customer payments and remit any payment to So Cal after deducting the fees, costs, and expenses associated with the services provided. *Id.* § 12.15. The FAC selectively invokes the provision allowing UFG to require a separate LDM addendum, FAC ¶ 86, but that language does not condition or erase the rights already granted by Section 12.15. At most, Plaintiffs raise a dispute about the meaning or application of an express contract, not a basis for quasi-contractual relief.

The FAC's new no-contract premise also contradicts Plaintiffs' original pleading. The original Complaint alleged that the Franchise Agreements contemplated that customer payments collected by UFG for LDM services would be remitted to the applicable franchisee, less costs and expenses. Compl. ¶ 18. Its CFIL claim likewise alleged that UFG "misrepresented the revenue allocation for long-distance moves." *Id.* ¶ 102(e). The FAC now asserts that the 2008, 2019, and 2020 Agreements contain no LDM provision and that UFG's receipt of LDM leads is "governed by no contract term." FAC ¶ 85. It similarly denies that Section 12.15 governs So Cal's participation because no separate LDM addendum was executed.

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

*Id.* ¶ 86. Changing Plaintiffs' characterization of the agreements does not change their terms or move the alleged benefit outside the contractual relationship. Because the Franchise Agreements govern the subject matter underlying Count VIII, the unjust-enrichment claim should be dismissed.

### H. Dismissal Should Be With Prejudice and Without Further Leave to Amend.

Leave may be denied for repeated failure to cure deficiencies, futility, undue prejudice, or bad faith. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Failure to correct defects after a court has identified them is a strong indication that no additional facts can save the claims. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Dismissal with prejudice is particularly appropriate where plaintiffs had ample opportunity and specific instructions but still failed to plead viable claims. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011).

That is this case. The Court dismissed all claims and supplied a detailed roadmap. Order at 13–25. The FAC preserves the same collective structure; repeats an independent covenant claim the Court expressly held unavailable; recasts disclosed and authorized purchasing terms as concealment; leaves the CFIL claim without Plaintiff-specific reliance or a false required disclosure; and tries to rescue LDM restitution by contradicting the original pleading. These are not defects that a third complaint could cure without changing the theories again or contradicting the governing documents. Further amendment would prejudice UFG by requiring another round of motion practice in a lawsuit whose core theories have now failed twice. The dismissal should be with prejudice and without leave to amend.

## V. CONCLUSION

For these reasons, UFG respectfully requests that the Court dismiss the First Amended Complaint in its entirety, with prejudice and without leave to amend.

Dated: August 21, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Clair E. Wischusen*
Calvin E. Davis
Candice S. Nam
Peter G. Siachos (*pro hac vice*)
Clair E. Wischusen (*pro hac vice*)
Attorneys for Defendant, UNITS Franchising Group, Inc.

**CERTIFICATE PURSUANT TO L.R. 11-6.1**

The undersigned, counsel of record for defendant UNITS Franchising Group, Inc., certifies that this brief contains 6,906 words, which is within the word limit of L.R. 11-6.1.

Dated: August 21, 2026

GORDON REES SCULLY MANSUKHANI, LLP
By: */s/ Clair E. Wischusen*
Calvin E. Davis
Candice S. Nam
Peter G. Siachos (*pro hac vice*)
Clair E. Wischusen (*pro hac vice*)
*Attorneys for Defendant, UNITS Franchising Group, Inc.*

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071