**THE GHILEZAN LAW FIRM**
R. Michael Ghilezan, Esq. (SBN 282340)
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 878-2630
Facsimile: (310) 496-2872
Email: michael@ghilezanlaw.com

Robert Zarco, Esq. (FBN 502138) (admitted *pro hac vice*)
Himanshu M. Patel, Esq, (FBN 167223) (admitted *pro hac vice*)
F. Alaina Rodriguez, Esq. (FBN 1070046) (admitted *pro hac vice*)
**ZARCO EINHORN SALKOWSKI, P.A.**
2 S. Biscayne Blvd., 34th Floor
Miami, FL 33131
Telephone: (305) 374-5418
Facsimile: (305) 374-5428

Attorneys for Plaintiffs
So Cal Storage, LLC, Bay Area Storage, LLC
NIMA Group, LLC, and TAJ Units Holdings, LLC

THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| So Cal Storage, LLC, a California limited liability company, Bay Area Storage, LLC, a California limited liability company, NIMA Group, LLC, a California limited liability company, and TAJ Units Holdings, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>UNITS Franchising Group, Inc., a South Carolina corporation,<br><br>Defendant. | Case No. 2:25-cv-10222-WLH-BFM<br><br>Assigned for All Purposes To:<br>Judge: Wesley L. Hsu<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIF'S AMENDED COMPLAINT** |

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1
II. LEGAL STANDARD ........ 2
III. ARGUMENT ........ 3
A. The FAC Satisfies Rules 8's Pleading Standards. ........ 3
B. Plaintiffs Have Sufficiently Pled Claims for Misrepresentation and Concealment (Counts I and II). ........ 5
1. Plaintiffs Have Sufficiently Pled Count I. ........ 5
2. Plaintiffs Have Sufficiently Pled Count II. ........ 7
3. Counts I and II are Not Preempted by the CFIL. ........ 8
C. Counts III and IV Plead for Breach of Contract Claims. ........ 8
1. Count III is Adequately Pled. ........ 9
2. Count IV is Succinctly Pled. ........ 10
D. Count V Is Adequately Pled. ........ 11
E. Count VI Is Adequately Pled. ........ 12
F. Plaintiffs Have Succinctly Pled Count VII. ........ 13
G. Plaintiffs' Have Adequately Pled Count VIII. ........ 16
H. Any Dismissal Should Be Without Prejudice and With Leave to Amend. ........ 20
IV. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 465 S.E.2d 84 (1995) ........... 9, 12
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 2
*Ball v. Canadian Am. Exp. Co.*, 314 S.C. 272 (Ct. App. 1994) ........................... 11
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 2
*Benavidez v. County of San Diego*, 993 F.3d 1134 (9th Cir. 2021) .................... 3, 10
*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001)......................................... 5
*Cafasso, United States ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011)............................................................................................... 2
*Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 440 S.E.2d 129 (1994) ......................................................................................................... 16
*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................. 2
*Conner v. City of Forest Acres*, 348 S.C. 454 (2002) ........................................... 11
*Crenshaw v. Erskine Coll.*, 432 S.C. 1, 850 S.E.2d 1 (2020) ................................ 12
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ............... 21
*Foman v. Davis*, 371 U.S. 178 (1962) .................................................................. 20
*Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001) .................................................... 3
*Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602 (S.C. 1962) ................................ 4
*Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026) .......................... 3, 4, 20
*Guardian Life Ins. Co. of Am. v. Andraos*, No. CV0705732SJOFMOX, 2008 WL 11338650 (C.D. Cal. Nov. 7, 2008)........................................................................ 5
*In re Apple iPhone Antitrust Litig.*, 846 F.3d 313 (9th Cir. 2017)......................... 20
*King v. Carolina First Bank*, 26 F. Supp. 3d 510 (D.S.C. 2014)............................. 9
*Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269 (C.D. Cal. 2022) ......................... 14
*Mailand v. Burckle*, 20 Cal. 3d 367 (1978).......................................................... 15
*MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*, 779 F. Supp. 3d 1083





THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

(C.D. Cal. 2025) .......... 2
*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) .......... 14
*Quail Hill, LLC v. County of Richland*, 692 S.E.2d 499 (S.C. 2010) .......... 7
*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 19
*Reddy v. Litton Industries, Inc.*, 912 F.2d 291 (9th Cir. 1990) .......... 19
*Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496 (S.C. Ct. App. 2003) .......... 5
*Road, LLC v. Beaufort County*, 443 S.C. 11, 902 S.E.2d 366 (2024) .......... 12
*Schnellman v. Roettger*, 368 S.C. 17 (S.C. App. 2006) .......... 7
*Smith v. Canal Ins. Co.*, 275 S.C. 256, 269 S.E.2d 348 (1980) .......... 11
*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) .......... 19
*Thompson v. Killian*, 447 S.C. 177, 924 S.E.2d 606 (2025) .......... 16
*U.S. ex rel. Williams Elec. Co. v. Metric Constructors, Inc.*, 325 S.C. 129, 480 S.E.2d 447 (1997) .......... 12
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 3
*Walling v. Beverly Enterprises*, 476 F.2d 393 (9th Cir. 1973) .......... 5

**Statutes**

Cal. Corp. Code § 31201 .......... 8
Cal. Corp. Code § 31202 .......... 8, 14

**Rules**

Fed. R. Civ. P. 8 .......... 2, 3, 4, 5, 19, 20
Fed. R. Civ. P. 9(b) .......... 3, 5, 6, 7, 14, 20
Fed. R. Civ. P. 10(c) .......... 3
Fed. R. Civ. P. 12 .......... 2, 20
Fed. R. Civ. P. 15(a) .......... 20, 21

**Regulations**

16 C.F.R. § 436.5(h) .......... 6, 14

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant UNITS Franchising Group, Inc. ("UFG" or "Defendant") seeks dismissal through arguments that mischaracterize the applicable law and ignore the curative factual allegations Plaintiffs added to the First Amended Complaint ("FAC") in direct response to this Court's July 9, 2026 Order.

This action arises from UFG's course of deceptive conduct in inducing Plaintiffs to invest in UNITS franchises and its subsequent breaches of the Franchise Agreements. Plaintiffs' misrepresentation claims arise from UFG's representations in Items 1 and 8 of its Franchise Disclosure Document ("FDD") that the UNITS business operates according to a "proprietary system" built on "proprietary, custom-built containers" for which "there are no alternate sources of supply." That representation was false. The containers and mules are off-the-shelf products manufactured by Havener, USC, Boxwell, and Cardinal, available to the general public and to UFG's competitors at materially lower prices. UFG concealed this falsity by instructing vendors not to communicate with franchisees while marking up the equipment in excess of fifty percent (50%).

Plaintiffs' breach of contract claims rest on express promises, not on the concealment alleged in Counts I and II. Section 12.2 of the 2019, 2020, and 2022 Franchise Agreements (§13.2 - 2008 Agreement) commits UFG to provide the UNITS® Equipment "at competitive prices" and limits it to "a reasonable profit"; UFG charged prices that were neither. Section 10.3.1 (§11.3.1 - 2008 Agreement) bars UFG from using National Advertising Fund ("NAF") contributions to defray its general operating expenses; UFG paid $530,861 in corporate salaries out of the Fund in 2024, along with vendor-relationship conferences and VIP tickets to NASCAR events. And § 21.14 (§22.14 - 2008 Agreement) requires that "both Franchisor and Franchisee shall act reasonably and in good faith"; UFG instead exercised its discretion over supplier approval, system modifications, and long-distance-move

revenue to extract value from Plaintiffs. UFG's concealment of the equipment's true source and price is a separate wrong, pleaded in Counts I, II, and V—it is what prevented Plaintiffs from discovering the pricing breach; it is not the breach.

Defendant's shotgun-pleading argument imports a rule developed for multi-defendant complaints into a case with a single defendant and ignores that the FAC separates every cause of action into its own count supported by specific facts, figures, and citations. Defendant treats Count VI as though nothing has changed, but the FAC now anchors the covenant to an express provision and re-pleads it as breach of contract, not an independent claim. Several of Defendant's remaining arguments rest on authority that does not support them.

Accepting the FAC's allegations as true and construing them in Plaintiffs' favor, Plaintiffs have stated plausible claims for relief, and Defendant's Motion should be denied.

## II. <u>LEGAL STANDARD</u>

Rule 8 requires only a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *MSC Mediterranean Shipping Co. S.A. v. BNSF Ry. Co.*, 779 F. Supp. 3d 1083, 1090 (C.D. Cal. 2025).

Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Allegations of fraudulent

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

conduct "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). However, this Rule 9(b) standard "does not require absolute particularity or a recital of the evidence." *Benavidez v. County of San Diego*, 993 F.3d 1134 (9th Cir. 2021). "A complaint need not allege a precise time frame, describe in detail a single specific transaction or identify the precise method used to carry out the fraud." *Id.*

## III. ARGUMENT

### A. The FAC Satisfies Rules 8's Pleading Standards.

Defendant mischaracterizes the FAC as a "shotgun pleading" under *Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026). Mot. at 18–19. Defendant's "impermissible collective pleading" argument is contradicted by its own case law.

As the Ninth Circuit confirmed in *Gibson*, a complaint violates Rule 8 when it (i) asserts ***multiple*** claims against ***multiple*** defendants without identifying which defendant did what; (ii) bundles multiple causes of action into a single claim resting on all facts alleged; and (iii) is conclusory and vague, lacking even a threadbare recital of the elements. *Id.* at 1291–92.

The FAC is materially different from the complaint in *Gibson* and satisfies Rule 8. This action involves a single defendant, and UFG cannot claim it lacks notice of the conduct alleged. Each of the eight counts occupies its own numbered range, pleads its own elements, and links specific sets of facts to its cause of action. *See Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) (Fed. R. Civ. P. 10(c) allows adoption by reference within a complaint). Nor is the FAC conclusory or vague. It identifies each Plaintiff, its Agreement, and its date, FAC ¶¶ 7–10, matches each Plaintiff to the FDD it received, and quotes the Item 1 and 8 language relied upon. FAC ¶¶ 22–26. It quotes the provisions breached—§§ 12.2 and 13.2 on pricing, FAC ¶¶ 44–46; §§ 10.3.1 and 11.3.1 on the NAF, FAC ¶ 78; §§ 9.2, 11.5, and 13.1 on the software rollout, FAC ¶¶ 65–67; and §§ 21.14 and 22.14 on good faith, FAC ¶ 125. And it pleads figures: an $800 per-container differential, FAC ¶ 48, and $530,861 in corporate salaries paid



THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

from the Fund in 2024, FAC ¶ 79. Simply put, "it does not make it difficult…for [defendant] to formulate a response." *Gibson,* 165 F.4th at 1288.

Defendant also attacks Plaintiffs' contract and restitution counts by imposing a heightened pleading standard that Rule 8 does not require. Mot. at 19. Defendant argues that Count III does not identify which Plaintiff's NAF contribution funded which challenged expense. Mot., at 19. Rule 8 requires no such tracing. Each Plaintiff's contribution is pleaded—every Plaintiff pays "two percent (2%) of that month's Gross Sales" into a single Fund UFG administers, FAC ¶ 77—as is each Plaintiff's damage: the contributions "UFG diverted to its own general operating expenses and to the personal benefit of its founder." FAC ¶ 108. Because the Fund is commingled by design, no Plaintiff's dollars can be traced to a particular expenditure, and South Carolina requires only "damage as a direct and proximate result of the breach," *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962), not itemization at the pleading stage.

Defendant argues Count IV does not identify the Plaintiff behind its price comparison, but a specific, quantified price differential on an identical product gives Defendant fair notice; Rule 8 requires no more, and Defendant cites no authority to the contrary.

Defendant calls Count VI a "collective covenant theory already rejected." Mot., at 19. It is neither: as shown in Section III.E, *infra*, Count VI now pleads breach of an express contractual term—§ 21.14 (§ 22.14, 2008 Agreement)—and identifies the specific provisions conferring the discretion at issue and the specific exercises of that discretion alleged to have breached it. FAC ¶¶ 125–127. Defendant's Motion does not mention §§ 21.14 or 22.14.

Defendant argues Count VIII seeks "all Plaintiffs" LDM revenue without identifying any lead, customer, or amount. Mot., at 19. That objection goes to the request for relief. *See* FAC ¶ 149. Rule 8 does not require Plaintiffs to "demonstrate with precision how the defendant's actions were a violation." *Guardian Life Ins. Co.*





THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

*of Am. v. Andraos*, No. CV0705732SJOFMOX, 2008 WL 11338650, at *4 (C.D. Cal. Nov. 7, 2008).

Defendant's Rule 8 challenge must therefore be denied.

**B. Plaintiffs Have Sufficiently Pled Claims for Misrepresentation and Concealment (Counts I and II).**

Defendant argues that Counts I and II should be dismissed under South Carolina law on the following grounds: (i) Rule 9(b)'s pleading standard; (ii) failure to plead falsity or duty to disclose; and (iii) the Franchise Agreements "contradict the alleged concealment" by expressly authorizing designated purchases and permitting UFG a reasonable profit. Mot. at 20–21. Defendant's arguments are unavailing.

**1. Plaintiffs Have Sufficiently Pled Count I.**

Defendant argues that Count I is not sufficiently pled under Rule 9(b). Mot. at 20.

Rule 9(b) expressly permits mental states such as malice, intent, knowledge, and other conditions of mind to be alleged generally. Fed. R. Civ. P. 9(b); *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973) (recognizing difficulty of pleading a defendant's state of mind before discovery). The allegations must give "notice of the particular conduct" charged. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

Fraudulent misrepresentation under South Carolina law requires a representation; its falsity; its materiality; knowledge of falsity or reckless disregard; intent that it be acted upon; the hearer's ignorance, reliance, and right to rely; and consequent and proximate injury. *Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496, 503–04 (S.C. Ct. App. 2003).

The FAC satisfies each element: (1) representation—UFG represented that there were "no alternate sources of supply" and that "all purchasing had to route through UFG," FAC ¶¶ 94–95; (2) falsity—the representations "were false when made": UFG bought directly from the manufacturers and knew they sold identical

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

products to the public and UFG's competitors at materially lower prices, FAC ¶¶ 60–61, 95; (3) materiality—had Plaintiffs known, "they would have purchased equipment from alternative sources at lower prices," FAC ¶ 97; (4) "UFG knew [the representations] were false," FAC ¶ 95; (5) intent—UFG intended Plaintiffs to rely "by continuing to purchase containers, mules, trucks, and equipment exclusively through UFG at inflated prices," FAC ¶ 96; (6) Plaintiffs were "ignorant of the concealed facts," *id.*; (7) Plaintiffs, "unable to discover [the concealed facts] through reasonable diligence given UFG's active concealment, did so rely," *id.*; (8) UFG owed a duty to disclose because it "had exclusive knowledge of material facts not known to or reasonably discoverable by Plaintiffs," and actively concealed them, including by directing Boxwell "not to communicate or transact directly with Plaintiffs," FAC ¶¶ 62–64, 93; and (9) Plaintiffs "suffered damages, including the excessive amounts paid to UFG for non-proprietary equipment," FAC ¶ 98.

These allegations also satisfy Rule 9(b)'s who, what, when, where, and how, which Count I expressly incorporates: UFG concealed its exclusive knowledge of the equipment's true source and price "throughout the franchise relationship." FAC ¶¶ 92, 94.

Defendant's remaining argument—that the FDDs and Franchise Agreements "disclosed" the very matters Plaintiffs call concealed, so that no concealment is actionable—confuses the disclosure of a right with the disclosure of a fact. Mot. at 20–21. The FDDs disclosed that UFG "reserve[d] the right to derive revenue" from required purchases and could "retain volume rebates, markups and other benefits." FAC ¶ 37. They did not disclose what Item 8 of the FTC Franchise Rule requires: the suppliers from which the required goods actually come and "the basis for the payment" UFG receives from those suppliers. 16 C.F.R. § 436.5(h); FAC ¶¶ 19, 37. The Rule expressly defines a "payment" to include "the sale of similar goods or services to the franchisor at a lower price than to franchisees"—precisely the fact Plaintiffs allege UFG concealed. *Id.*; FAC ¶¶ 28, 32, 60. A reserved right to earn a

profit does not disclose the magnitude of that profit, who manufactures the goods, or that the same goods are freely available elsewhere for less.

Defendant's motion to dismiss Count I must be denied.

**2. Plaintiffs Have Sufficiently Pled Count II.**

Defendant argues that Count II fails for the same reasons as Count I, including for want of "particulars to meet Rule 9(b)." Mot. at 20–21. However, fraud is not an element of negligent misrepresentation in South Carolina, so Rule 9(b) does not apply. *Schnellman v. Roettger*, 368 S.C. 17, 20–21 (S.C. App. 2006). Even so, Count II ties its breach allegation to the same particularized concealment mechanism underlying Count I, FAC ¶ 103, and is sufficiently pled under either standard.

Negligent misrepresentation under South Carolina law requires a false representation; the defendant's pecuniary interest in making it; a duty of care to communicate truthful information; breach of that duty; justifiable reliance; and pecuniary loss. *Quail Hill, LLC v. County of Richland*, 692 S.E.2d 499, 508 (S.C. 2010).

The FAC satisfies each element. UFG "made representations to Plaintiffs—including, through its officers and regional developers, that there were no alternative sources for the containers and equipment and that all purchasing had to route through UFG—that were false." FAC ¶ 101. UFG made those representations as the seller of the equipment it required Plaintiffs to buy. FAC ¶ 102. As to duty of care, a party with a pecuniary interest in a transaction must "see that he communicated truthful information." *Quail Hill*, 692 S.E.2d at 508. That duty arises from UFG's role in the transaction and its exclusive knowledge of the supply chain it controlled. FAC ¶¶ 60, 102. Section 12.2 does not create the tort duty; it is the promise underlying Count IV. As to breach, UFG failed to communicate accurate information about the equipment's source and availability, including by directing Boxwell "not to communicate or transact directly with Plaintiffs." FAC ¶¶ 60–64, 103. And Plaintiffs "justifiably relied

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

on UFG's representations in continuing to purchase equipment through UFG and suffered pecuniary loss as a direct and proximate result." FAC ¶104.

Defendant's motion to dismiss Count II must be denied.

**3. Counts I and II are Not Preempted by the CFIL.**

Defendant argues that Counts I and II remain preempted because they incorporate the FAC's presale allegations and repeat Item 8's "no alternate sources of supply" statement. Mot. at 20. The Court's preemption ruling does not reach the theory Counts I and II now plead.

The Court held the original Counts I and II preempted because they were "premised on the same four categories of alleged misrepresentation" as the CFIL claim: the "proprietary system," LDM revenue, "proprietary software," and Item 19 financial performance. Order at 14–16. Both statutory hooks the Court relied on reach presale conduct only. Section 31202 governs "untrue statement[s]...required to be disclosed in writing" in an FDD—a presale document by definition. Cal. Corp. Code § 31202. And the § 31201 holding turned on timing: the LDM statements "were allegedly made before Plaintiffs signed their respective Franchise Agreements and were material to Plaintiffs' decisions to invest." Order at 16.

Counts I and II as repleaded rest on post-sale conduct: after each Plaintiff signed, UFG instructed its approved vendors—Boxwell among them—not to communicate or transact directly with franchisees and to redirect purchasing inquiries back to UFG, so that Plaintiffs could not learn who manufactured the containers or what those manufacturers charged. FAC ¶¶ 61, 92, 94, 103. That is conduct, not a written FDD disclosure, and it occurred post-sale; it falls outside § 31202, which reaches only written presale disclosures, and outside § 31201 as this Court applied it, and it is none of the four categories the Order addressed.

Defendant's preemption argument must therefore be rejected.

**C. Counts III and IV Plead for Breach of Contract Claims.**

Defendant argues that Counts III and IV fail because Plaintiffs do not identify

a breached provision or explain how UFG's conduct violated it, and that conduct "expressly authorized by the contract cannot constitute a breach." Mot. at 21 (citing *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 465 S.E.2d 84 (1995)).

Defendant's reliance on Adams is misplaced. There, no contractual pricing term existed because "there was no agreement" as to price—so there was nothing to breach. 465 S.E.2d at 85. Here, the terms at issue are express. Section 10.3.1 limits NAF spending to "reasonable costs and expenses...incur[red] in activities reasonably related to the administration of the National Advertising Fund," and § 12.2 commits UFG to "competitive prices" while allowing it only "a reasonable profit." FAC ¶¶ 44–46, 78. Plaintiffs ask the Court to enforce those terms, not to supply one the parties never agreed to.

A breach of contract claim under South Carolina law requires a binding contract, breach or unjustifiable failure to perform, and damage as a direct and proximate result. *King v. Carolina First Bank*, 26 F. Supp. 3d 510, 517 (D. S.C. 2014). Counts III and IV plead each element.

### 1. Count III is Adequately Pled.

Defendant argues that Count III is conclusory, demanding a level of specificity the law does not require. Mot. at 22. Plaintiffs allege that UFG's 2024 income statement, attached to its own 2025 FDD, shows UFG paid $530,861.00 in corporate salaries from the NAF—over half of the approximately $1 million collected that year—while representing elsewhere in the same FDD that 100% of 2024 contributions were spent on four enumerated advertising categories. FAC ¶ 79. Sections 10.3.1 and 11.3.1 flatly prohibit using Fund contributions "to defray any of Franchisor's general operating expenses," subject only to narrow exceptions, FAC ¶¶ 77–78, and corporate salaries are the paradigmatic general operating expense. UFG's demand that Plaintiffs plead each employee's identity, role, and payroll allocation pre-discovery inverts the standard: those facts lie exclusively in UFG's possession. The conference and NASCAR allegations are likewise tethered—the FAC alleges such expenditures came



THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

from the Fund and served UFG's vendor relationships and its founder's personal preferences, not the brand. FAC ¶ 81. Each Plaintiff pleads its own contract, its mandatory 2% contribution to a single Fund that UFG alone administers and commingled by design. FAC ¶¶ 7–10, 77, 106–108.

Defendant's motion to dismiss Count III should be denied.

**2. Count IV is Succinctly Pled.**

Defendant argues that Count IV does not plausibly allege a noncompetitive price or unreasonable profit. Mot. at 22–23. But Count IV alleges a concrete price comparison on identical goods: one Plaintiff purchased identical Boxwell containers directly for approximately $800 less per container than UFG charged, and, on information and belief, UFG's markup was the highest Boxwell applied to any customer. FAC ¶ 48. "Identical" answers the comparability objection at the pleading stage. FAC ¶¶ 28, 32, 60. UFG's demand for freight terms, warranties, volume commitments, its cost, and its margin requires Plaintiffs to plead UFG's internal pricing data—information UFG itself concealed. FAC ¶¶ 60–61. A plaintiff need not plead a transaction with evidentiary precision. *Benavidez*, 993 F.3d at 1145. UFG required all Plaintiffs, continuously and to the present, to purchase containers, mules, trailers, and trucks exclusively through UFG at noncompetitive prices, FAC ¶ 47, required trucks through a broker although available directly at lower prices, and rented used equipment at exorbitant rates while franchisees waited months for orders, FAC ¶ 56. Nor is the claim impermissibly collective: each Plaintiff pleads its own agreement containing the same pricing provision and was subjected to the same exclusive-purchasing requirement. FAC ¶¶ 7–10, 44–46, 110. Whether an $800-per-container markup on an identical, publicly available product—the vendor's highest—exceeds a "reasonable profit" is a fact question; these allegations cross the plausibility line.

Defendant's motion to dismiss Count IV should be denied.

### D. Count V Is Adequately Pled.

Defendant argues that Count V fails because "South Carolina's 'breach of contract accompanied by a fraudulent act' doctrine is a basis for punitive damages, not a free-standing substitute for a defective contract claim." Mot., at 23–24. Defendant's argument is without merit.

Breach of contract accompanied by a fraudulent act requires a breach of contract; fraudulent intent relating to the breaching of the contract, not merely its making; and a fraudulent act accompanying the breach. *Conner v. City of Forest Acres*, 348 S.C. 454, 466 (2002). The fraudulent intent may be directed either at the performance underlying the contract or at the breach itself, and proof of it "may or may not involve false representations." *Ball v. Canadian Am. Exp. Co.*, 314 S.C. 272, 276 (Ct. App. 1994). The accompanying fraudulent act is broadly defined as any act "characterized by dishonesty in fact or unfair dealing," *Conner*, 348 S.C. at 466, and may precede, accompany, or follow the breach if connected to it and not too remote in time or character. *Smith v. Canal Ins. Co.*, 275 S.C. 256, 269 S.E.2d 348 (1980).

Count V pleads each element. The breach is UFG's violation of §§ 12.2 and 13.2 by charging non-competitive prices and taking an unreasonable profit. FAC ¶ 119. The fraudulent intent is UFG's purpose in continuing to breach: it knew what the manufacturers charged other buyers and intended to preserve the concealed markup the breach generated. FAC ¶¶ 117–118. The accompanying fraudulent act is UFG's instruction to its own vendors, including Boxwell, not to deal directly with franchisees and to route every inquiry back to UFG. FAC ¶¶ 60–64, 120.

That the underlying breach is the same one pleaded in Count IV is not a defect: the doctrine requires the same breach plus a separate fraudulent act, not a second independent breach. *Conner*, 348 S.C. at 466. And the accompanying act is not a relabeling of the breach: the breach is the price UFG charged; the fraudulent act is the vendor instruction that kept Plaintiffs from learning what that price should have been. Nor is the act the FDD language Defendant points to—presale statements that UFG



THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

reserved the right to derive revenue and retain markups. FAC ¶¶ 34, 37, 44–46. The act Count V alleges is post-sale, ongoing, and undiscoverable until "late 2024 at the earliest." FAC ¶¶ 62–63.

Defendant's motion to dismiss Count V should be denied.

### E. Count VI Is Adequately Pled.

Defendant argues that Count VI merely reasserts a claim the Court already rejected. Mot. at 24–25. UFG attacks a claim Plaintiffs no longer plead.

The dismissed Count V was a standalone implied-covenant claim. Order at 22–23. Count VI of the FAC is a breach of contract claim resting on § 21.14 - 2019, 2020, and 2022 Franchise Agreements and § 22.14 - 2008 Franchise Agreement, in which UFG covenanted that "both Franchisor and Franchisee shall act reasonably and in good faith" and that a party whose consent is required "shall not unreasonably withhold consent" unless the agreement commits the matter to that party's sole discretion. FAC ¶¶ 50, 125. Plaintiffs allege that Defendant breached this provision in exercising the discretion the Agreements confer upon it.

Count VI does not ask the covenant to "create new duties." Under *Road, LLC v. Beaufort County*, the covenant "serves only to govern the manner in which parties to a contract enforce their existing contractual rights and carry out their existing contractual duties." 443 S.C. 11, 24, 902 S.E.2d 366, 372 (2024). Paragraph 126 identifies the discretionary provisions (§§ 9.2, 11.5, 10.3, 12.2, 12.1 and their 2008 counterparts), and paragraph 127 alleges the manner of exercise—a defective POS forced systemwide mid-peak-season on under a month's notice, Fund monies spent on salaries and NASCAR tickets, concealed markups, vendor-interference instructions, and blanket unexplained supplier denials. FAC ¶¶ 126–129.

*Adams* and *Crenshaw* do not immunize that conduct. Those cases hold there is no breach where a party does what the contract *expressly* entitled it to do. *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995); *Crenshaw v. Erskine Coll.*, 432 S.C. 1, 850 S.E.2d 1 (2020). The Agreements nowhere entitle UFG





THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

to exercise its discretion dishonestly or unreasonably; § 21.14 conditions every exercise of discretion and every withholding of consent on reasonableness and good faith. Where the contract cabins the manner of exercising discretion, bad-faith exercise breaches the contract. *See U.S. ex rel. Williams Elec. Co. v. Metric Constructors, Inc.*, 325 S.C. 129, 480 S.E.2d 447 (1997) ("…bad faith in performance of one's contractual duties would give rise to violation of [the] implied obligation of good faith and fair dealing").

Defendant's plausibility attack fails on the pleadings. The NAF and pricing theories rest on UFG's own financial records. FAC ¶¶ 48, 79. The LDM, territory, and rebate allegations identify the mechanism (Plaintiffs' self-funded leads routed to UFG), the competitor (one in a Plaintiff's Protected Territory, supplied by UFG with UNITS containers), and the rebate (earned by at least one Plaintiff, withheld as "non-compliant" with a program no Plaintiff was obligated to join). FAC ¶¶ 82–87. Customer names and withheld amounts sit in UFG's records. UFG's contract citations defeat themselves: § 12.15 - 2022 Agreement merely reserves a right to require an LDM addendum "on notice" and no Plaintiff signed one, FAC ¶ 86; § 1.4 is the Protected Territory covenant UFG's conduct contravened, FAC ¶ 88; and the 2008, 2019, and 2020 Agreements contain no LDM provision at all, FAC ¶ 85, leaving no allocation for the covenant to "rewrite."

Defendant's motion to dismiss Count VI should be denied

**F. Plaintiffs Have Succinctly Pled Count VII.**

Defendant argues that Count VII does not cure the defect the Court identified in its Order.

The Court dismissed the original CFIL claim because Plaintiffs failed "to specify which FDDs each Plaintiff relied on and when each Plaintiff relied on those statements." Order at 25. The FAC now alleges, Plaintiff by Plaintiff, which FDD each relied on and when; it identifies the Items containing the misstatements (Items 1, 8, and 10); and it quotes the challenged language verbatim, including Item 1's





THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

"proprietary, custom-built containers" representation and Item 8's representations that UFG was "the only approved supplier" and that "there are no alternate sources of supply." FAC ¶¶ 22–26, 33–35, 135. That is the who (UFG), what (the quoted Item 1, 8, and 10 statements), when (before each identified agreement's execution), where (each identified FDD), and how (falsity because identical products were freely available from third-party vendors, as UFG knew), FAC ¶¶ 28–32. Where each Plaintiff identifies the disclosure document it received and the specific Items and language challenged, Rule 9(b) is satisfied. *See, e.g., Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269 (C.D. Cal. 2022) (pleadings sufficient under Rule 9(b) where they identified the specific claim alleged to be misleading).

Defendant argues that the alleged misstatements are not actionable because Plaintiffs assert a "free-ranging duty to disclose," Mot. at 26. However, § 31202 makes it unlawful willfully to make any untrue statement of material fact in a statement required to be disclosed in an FDD, or willfully to omit any material fact required to be stated. Cal. Corp. Code § 31202. For Item 1, Plaintiffs allege affirmatively untrue statements—"proprietary," "custom-built," "no alternate sources of supply"—when the identical containers and mules were off-the-shelf products the same vendors sold to the public and UFG's competitors. FAC ¶¶ 27–32. Item 8 required UFG to state "the basis for the payment" it received from designated suppliers, which includes "the sale of similar goods or services to the franchisor at a lower price than to franchisees." 16 C.F.R. § 436.5(h); FAC ¶ 19. Plaintiffs allege that Item 8's quantified revenue disclosures understated the consideration UFG derived and omitted the vendors' identities and the basis for the payments UFG received. FAC ¶¶ 36–37. The omission alleged is thus of a fact "required to be stated," not a free-ranging disclosure grievance.

Defendant separately attacks the Item 10 allegations as impermissible pleading on information and belief. Mot. at 26 (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). *Neubronner* permits information-and-belief pleading where the facts

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

are peculiarly within the defendant's knowledge and the complaint states the factual basis for the belief. Both are satisfied. UFG's dealings with its lender and vendors lie within its exclusive possession, and the FAC states its basis: UFG's "own financial statements reflect a lending/lease relationship with Live Oak Bank," disclosed nowhere in Items 8 or 10 while UFG represented that it "do[es] not offer direct or indirect financing." FAC ¶¶ 35, 38.

Finally, Defendant argues that reasonable reliance is not plausibly alleged because the Agreements "expressly disclosed UFG-approved suppliers, retained benefits and markups, and a reasonable profit." Mot. at 22. Yet, the provisions it cites do not supply "the very information allegedly concealed," rather they repeat the very misrepresentation alleged. Section 12.2 (§ 13.2, 2008 Agreement) itself represents that the UNITS Equipment is "distinctive as a result of being developed pursuant to the combined experience of Franchisor and its Affiliate" and requires Plaintiffs to purchase "exclusively from Franchisor"—language the FAC pleads as *reinforcing* the FDDs' false proprietary-system representations, not correcting them. FAC ¶ 31. The concealed facts were the identity of the actual manufacturers, the products' free availability to the public at materially lower prices, and the magnitude of UFG's markup (none of which appears in §§ 12.1–12.2 or 13.1–13.2). FAC ¶¶ 28, 32, 37, 60. A clause permitting a "reasonable profit" on "proprietary" equipment tells a franchisee nothing about the equipment being off-the-shelf; § 12.2's commitment to "competitive prices" gave Plaintiffs more reason to rely. Nor is there any missing "contrary FDD sentence": falsity is measured against the facts, not against another sentence in the same fraudulent document. UFG's position reduces to the claim that its franchise agreement put Plaintiffs on notice that its statutorily mandated disclosures were false. *See Mailand v. Burckle*, 20 Cal. 3d 367 (1978) (designated-supplier clause did not put franchisee on notice of undisclosed supplier arrangements).

Defendant's motion to dismiss Count VII must be denied.

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

### G. Plaintiffs' Have Adequately Pled Count VIII.

Defendant makes two arguments: (i) the Franchise Agreements govern the LDM benefit, so an unjust-enrichment theory is improper, Mot. at 27–28; and (ii) Plaintiffs cannot treat UFG's LDM conduct as contractual in Count VI and extra-contractual in Count VIII. Neither supports dismissal.

To recover for unjust enrichment, a plaintiff must establish a benefit conferred on the defendant by the plaintiff, realization of that benefit, and retention of the benefit under conditions making it unjust to retain without paying its value. *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994).

Plaintiffs allege that they each "paid for and generated customer leads through their own paid advertising," and that when such a customer requested a long-distance move, UFG required the Plaintiff to route that customer to UFG. FAC ¶¶ 82–88, 146. As to realization, UFG, which "has no lead-generation source of its own for Long-Distance Moving business," "serviced the resulting moves" and "collected the revenue from those moves directly from the customers." FAC ¶¶ 81–88, 147. And as to inequitable retention, UFG "retained that benefit without paying Plaintiffs anything in return"; when Plaintiffs declined to continue participating on those terms, UFG "routed the resulting business to Plaintiffs' competitors and stripped Plaintiffs of a royalty rebate they had earned." FAC ¶¶ 82–88, 148.

Defendant argues that *Thompson v. Killian*, 447 S.C. 177, 193, 924 S.E.2d 606, 614 (2025) bars Count VIII as a matter of law. *Thompson's* bar applies only where an express contract governs the same subject matter as the alleged benefit. As to NIMA, Bay Area, and TAJ, FAC ¶ 145 alleges that "[n]either the 2008 Franchise Agreement, the 2019 Franchise Agreement, nor the 2020 Franchise Agreement contains any provision governing Long-Distance Moving ("LDM"), the routing of customer leads to UFG, [or] the allocation of LDM revenue." UFG's appropriation of those Plaintiffs' self-funded leads is thus "governed by no express contract term." *Id.* As to So Cal, the question requires reading § 12.15 and comes out the same way.

THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

Defendant's remaining textual argument fails on the face of Exhibit A. Defendant contends that § 1.5.3 through 1.5.5 of the 2019, 2020, and 2022 Agreements reserve to UFG the right to sell services through alternate channels and provide that the franchisee "has no right to distribute those services or share in the proceeds from UFG's reserved activities," and that the System is defined to encompass the transportation of containers "from one location to another." Mot. at 11–12, 27–28. The Agreements say something considerably narrower.

First, § 1.5.5 provides only that the franchisee has no right "(i) to distribute the services as described in this § 1.5; or (ii) to share in any of the proceeds Franchisor's reserved rights and activities through alternative channels of distribution." Ex. A, 2019 Franchise Agreement § 1.5.5; 2020 Franchise Agreement § 1.5.5. The disclaimer thus reaches only the services § 1.5 describes and proceeds derived through "alternative channels of distribution"—that is, "joint marketing with partner companies and direct mail." *Id.* § 1.5.3. Plaintiffs do not seek a share of those proceeds; they seek the value of customer leads they generated, paid for, and were then required to route to UFG. FAC ¶¶ 82–84.

Second, and dispositively, LDM is not among "the services as described in this § 1.5" in the 2008, 2019, and 2020 Agreements. Only § 1.5.3 of the 2022 Agreement permits UFG "to sell UNITS Equipment and the services, including LDM services, and other products authorized for UNITS Businesses." Ex. A, 2022 Franchise Agreement § 1.5.3 (emphasis added). UFG added those words in 2022; the term "LDM" appears nowhere in the 2008, 2019, or 2020 Agreements.

Third, the recital Defendant invokes shows the same thing: only the 2022 Agreement recites containers that may be "transported from one location to another, including long distance moves between two UNITS Businesses, and other uses." Ex. A, 2022 Franchise Agreement at 1 (emphasis added); compare 2008, 2019, and 2020 Franchise Agreements at 1. In any event, a recital describing what the System features is not a term allocating revenue between franchisor and franchisee.

THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

Fourth, as to NIMA, Defendant's argument has no textual basis. The 2008 Agreement contains no analogue to § 1.5.5. Section 2.5—the 2008 counterpart to § 1.5—reserves UFG's rights and ends with the right "to engage in any activities not expressly forbidden by this Agreement." Ex. A, 2008 Franchise Agreement § 2.5. Defendant does not contend otherwise. Mot. at 28.

Where a franchisor amends its own form to add express LDM terms, their absence from the earlier forms is not a gap for the Court to fill by construction; it is the reason Count VIII lies for NIMA, Bay Area, and TAJ. So Cal's 2022 Agreement does contain a LDM provision, but it does not govern the benefit Count VIII claims. Section 12.15 gives UFG the right to require So Cal to use UFG for long-distance moving services, to charge "its then-current rates," and to "collect payment directly from customers and . . . remit payments to Franchisee, less all fees, costs and expenses for services provided." Ex. A, 2022 Franchise Agreement § 12.15. Those terms concern the performance and pricing of the moving service itself. None addresses compensation for the customer leads So Cal generated and was required to route to UFG. FAC ¶¶ 82–84, 146. So Cal did not perform the move; UFG did. FAC ¶ 147. What So Cal gave up was the lead; no provision of the 2022 Agreement assigns that lead any value.

Two features confirm the point. First, the remittance clause is permissive and keyed to services the franchisee performs—UFG "may remit payments to Franchisee, less all fees, costs and expenses for services provided"—and So Cal provided no such services. Id.; FAC ¶ 84. Second, § 12.15's reserved right to require So Cal to execute a LDM "addendum or agreement, effective on notice to Franchisee," was never exercised: no Plaintiff signed such an addendum, and UFG never gave the required notice. FAC ¶ 86. A reservation UFG chose not to exercise is not an express contract governing the benefit UFG received.

Nor does § 1.5.5 of the 2022 Agreement supply the term Defendant needs: as shown above, it disclaims only proceeds derived through "alternative channels of

distribution," and So Cal claims the value of leads it paid to generate, not a share of UFG's joint-marketing or direct-mail proceeds. Ex. A, 2022 Franchise Agreement §§ 1.5.3, 1.5.5.

Nor does Defendant's "contractual in one count, extra-contractual in another" argument require the Court to choose between Counts VI and VIII. Federal Rule of Civil Procedure 8(d)(2)–(3) permits a party to "state as many separate claims or defenses as it has, regardless of consistency." Count VI alleges that UFG's LDM-related conduct breached its express duty of good faith; Count VIII alleges, in the alternative, that UFG's retention of the value of Plaintiffs' self-generated leads is unjust because no contract assigns that value to UFG. Courts in this district are "persuaded by the authorities that allow plaintiffs to plead equitable relief in the alternative to legal relief and [do] not determine whether equitable relief is inadequate on a motion to dismiss." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024).

Defendant's remaining argument—that the FAC's contractual premise "contradicts" the original Complaint under *Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)—misreads both pleadings. Mot. at 28–29. The original Complaint's single sentence on this subject described § 12.15 of So Cal's 2022 Agreement and alleged that UFG had misrepresented how revenue under it would be allocated. Compl. ¶ 18. It made no allegation as to whether the 2008, 2019, and 2020 Agreements contain LDM provisions; they do not. The FAC now pleads what each Agreement separately says—precisely the differentiation this Court's Order directed. Order at 24–25. *Reddy* bars pleading facts that contradict a prior pleading without explanation, not replacing a collective characterization with the Agreement-specific allegations the Court required.

Any inadequate-legal-remedies argument would be equally unavailing: *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), addressed a plaintiff who strategically dropped her damages claim on the eve of trial; nothing resembling

THE GHILEZAN LAW FIRM
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES, CA 90067

THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

that posture is present here, where Count VIII is pled as an alternative theory of recovery, not a substitute for one abandoned.

Defendant's Motion as to Count VIII must be denied.

**H. Any Dismissal Should Be Without Prejudice and With Leave to Amend.**

Defendant asks this Court to dismiss the FAC with prejudice. Mot. at 29. The request should be denied even if the Court finds any count deficient.

Rule 15(a)(2) directs that leave to amend be given "freely . . . when justice so requires," and this Court applied that standard in dismissing the original Complaint. Order at 25. Nothing has changed to warrant a different result. This is Defendant's first challenge to the FAC, Plaintiffs' first amendment—filed and materially restructured in response to the Court's July 9, 2026 Order. Plaintiffs replaced the counts the Order found defective, re-anchored the good-faith claim to an express contractual provision, identified the specific sections the Order held were missing, and tied each Plaintiff to the specific FDD it received. Whatever the Court makes of those changes, they are not the "repeated failure to cure deficiencies" that *Foman* contemplates.

Defendant's own leading ground underscores the point. The Rule 8 objection on which its Motion now leads was available when Defendant moved to dismiss the original Complaint: the allegations it now calls undifferentiated appeared there in materially the same form, Compl. ¶¶ 20, 37–47, 87, ECF No. 1, yet Defendant invoked "shotgun" pleading only under Rule 9(b), and only as to the fraud counts. Mot. to Dismiss Compl. at 16, ECF No. 30. Nor does Gibson explain the omission: it issued two weeks before Defendant filed its Reply, and Defendant did not suggest then that the original Complaint suffered any Rule 8 defect. *See* Reply, ECF No. 37.

Rule 12(g)(2) forbids a second Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Plaintiffs do not ask the Court to decline to reach Defendant's arguments,

THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067

*see In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318-19 (9th Cir. 2017), but the timing bears directly on the relief Defendant seeks: a plaintiff cannot have "repeated[ly] fail[ed] to cure deficiencies," *Foman*, 371 U.S. at 182, that no one identified. Yet, Defendant asks this Court to dismiss with prejudice because Plaintiffs did not cure in August what Defendant first raised in August.

To the extent the Court concludes that any allegation requires greater specificity, Plaintiffs can plead whatever additional detail the Court may seek. The policy favoring amendment under Rule 15(a) is "to be applied with extreme liberality"; the party opposing amendment "bears the burden of showing prejudice"; and absent such a showing "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Dismissal with prejudice and without leave to amend "is not appropriate unless it is clear…that the complaint could not be saved by amendment." *Id*. at 1052. Defendant identifies no prejudice beyond the cost of the motion practice, and it has not shown futility as to any count.

## IV. <u>CONCLUSION</u>

Plaintiffs respectfully request that this Honorable Court enter an Order: (i) denying Defendant Motion to Dismiss Plaintiffs' First Amended Complaint; (ii) in the alternative, granting Plaintiffs leave to amend; and (iii) granting such other and further relief as this Honorable Court deems just and proper.

## <u>CERTIFICATE PURSUANT TO L.R. 11-6.1</u>

The undersigned, counsel of record for Plaintiffs, So Cal Storage, LLC, Bay Area Storage, LLC, NIMA Group, LLC, and TAJ Units Holdings, LLC, Inc., certifies that this brief contains 6,953 words, which is within the word limit of L.R. 11-6.1.

///
///
///
///
///

Dated: September 11, 2026

**THE GHILEZAN LAW FIRM**

By: /s/*R. Michael Ghilezan*
R. Michael Ghilezan, Esq.

and

By: /s/ *Himanshu M. Patel*
**Robert Zarco (FBN 502138)**
E-mail: rzarco@zarcolaw.com
**Himanshu M. Patel (FBN 0167223)**
E-mail: hpatel@zarcolaw.com
E-mail: acoro@zarcolaw.com
**F. Alaina Rodriguez (FBN 1070046)**
E-mail: farodriguez@zarcolaw.com

*Attorneys for Plaintiffs*

THE GHILEZAN LAW FIRM
1801 Century Park East, Suite 2400
Los Angeles, CA 90067