CALVIN E. DAVIS (SBN: 101640)
cdavis@grsm.com
CANDICE S. NAM (SBN: 293875)
cnam@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, California 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

PETER G. SIACHOS (*pro hac vice* to be submitted)
psiachos@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900
Facsimile: (843) 804-4691

CLAIR E. WISCHUSEN (*pro hac vice* to be submitted)
cwischusen@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Telephone: (202) 399-1009
Facsimile: (202) 800-2999

***Attorneys for Defendant, UNITS Franchising Group, Inc.***

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| So Cal Storage, LLC, a California limited liability company, Bay Area Storage, LLC, a California limited liability company, NIMA Group LLC, a California limited liability company, and TAJ Units Holdings, LLC, a Missouri limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>UNITS Franchising Group, Inc., a South Carolina corporation,<br><br>Defendant. | Case No. 2:25-cv-10222-WLH-BFM<br><br>**DEFENDANT UNITS FRANCHISING GROUP, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**[Fed. R. Civ. Proc. 12(b)(6)]**<br><br>Hearing Date: **October 2, 2026**<br>Hearing Time: **1:30 p.m.**<br>Hearing Dept: **Courtroom 9B** |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The FAC's Collective Allegations Still Fail to Give Fair Notice and the Fraud-Based Claims Do Not Satisfy Rule 9(b). .......... 2

B. Counts I and II Still Do Not Plead Actionable Post-Sale Misrepresentation or Concealment. .......... 3

C. Counts III and IV Still Do Not Plead a Plausible Breach. .......... 5

1. The Label "Corporate Salaries" Does Not Plead a Prohibited NAF Expenditure. .......... 5

2. An Unidentified $800 Differential Does Not Plausibly Show a Noncompetitive Price or Unreasonable Profit. .......... 6

D. Count V Fails Because the Underlying Pricing Claim is Deficient and the Alleged "Fraudulent Act" Is Not Pleaded With Particularity. .......... 7

E. Section 21.14 Does Not Save Count VI. .......... 7

F. Count VII Still Does Not State a CFIL Claim. .......... 9

G. Count VIII Is Barred Because the Franchise Agreements Govern the Alleged LDM Benefit. .......... 10

H. Further Leave to Amend Should Be Denied. .......... 12

III. CONCLUSION .......... 13


GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Estate of Taylor v. John Alden Life Insurance Co.*,
574 F. Supp. 3d 347 (D.S.C. 2021) .......... 11, 12

*Gibson v. City of Portland*,
165 F.4th 1265 (D.S.C. 2026) .......... 1, 2

*Road, LLC v. Beaufort Cnty.*,
443 S.C. 11, 902 S.E.2d 366 (2024) .......... 8, 9

*Schnellmann v. Roettger*,
368 S.C. 17, 627 S.E.2d 742 (Ct. App. 2006) .......... 3

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 1, 2, 3

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .......... 13

**Court Rules**

Fed. R. Civ. P. 12(g) .......... 13

Fed. R. Civ. P. 8 .......... 1, 2, 3, 12, 13

Fed. R. Civ. P. 8(d) .......... 12

Fed. R. Civ. P. 9(b) .......... passim

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Opposition [ECF No. 60] confirms that the First Amended Complaint ("FAC") [ECF No. 55] did not cure the defects that prompted dismissal of the original Complaint. The FAC adds contract citations and new labels, but still does not plead facts showing that UFG breached the Agreements or committed actionable fraud.

Plaintiffs respond to the FAC's collective pleading by emphasizing that there is only one defendant. Opp. at 3. But four separate Plaintiffs entered different Franchise Agreements, received different FDDs, made different purchases, dealt with different representatives and vendors, and allegedly suffered different losses. Yet the FAC continues to allege collectively that "Plaintiffs" received representations, requested alternate suppliers, paid inflated prices, generated LDM leads, and suffered damages. Rule 8 requires factual allegations to be tied to the corresponding claims and parties, and Rule 9(b) imposes heightened requirements where fraud is alleged. *See Gibson v. City of Portland*, 165 F.4th 1265, 1290, 1293 n.11 (9th Cir. 2026); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

The individual causes of action remain deficient. Counts I and II still fail to identify the particulars of any actionable post-sale misrepresentation or concealment. Count III infers misuse of the National Advertising Fund ("NAF") from the label "corporate salaries" without alleging that the salaries were for work outside functions the Agreements permit. Count IV relies on an unidentified $800 price differential without pleading facts showing a noncompetitive price or unreasonable profit.

The remaining claims likewise depend on expanding the Agreements beyond their terms. Count VI uses § 21.14's general good-faith language to impose duties not found in the more specific contractual provisions. FAC ¶¶ 50, 125–28. Count VIII seeks unjust enrichment for "customer leads" arising from the same LDM

relationship Plaintiffs elsewhere allege is governed by the Agreements. See id. ¶¶ 127(e), 146–48.

Plaintiffs already had the benefit of the Court's July 9 Order [ECF No. 52] and an opportunity to amend. The remaining defects are not technical omissions. The FAC should be dismissed with prejudice.

## II. ARGUMENT

### A. The FAC's Collective Allegations Still Fail to Give Fair Notice and the Fraud-Based Claims Do Not Satisfy Rule 9(b).

Plaintiffs respond to UFG's Rule 8 argument by noting that *Gibson* involved multiple defendants. Opp. at 3, ECF No. 60. But the problem is not the collective noun; it is that the pleading obscures which Plaintiff possesses the facts necessary to state each claim.

Each Plaintiff entered a different Agreement after receiving a different FDD. *See* FAC, ¶¶ 7–10, 23–26. Yet the allegations central to the new claims remain collective. The FAC does not identify which Plaintiff made the alleged direct Boxwell purchase; which Plaintiff proposed which alternate supplier and when; which UFG representative allegedly told which Plaintiff that all purchasing had to route through UFG; which Plaintiff generated which LDM customer; or which Plaintiff suffered which loss. *See id.* ¶¶ 47–48, 52, 54, 74, 82, 98. Those are not evidentiary details; they identify the transaction and claimant necessary to understand each claim.

Nor does the single-defendant distinction answer Rule 9(b). Rule 9(b) requires the circumstances of the alleged fraud to be pleaded with particularity. *Vess*, 317 F.3d at 1103–04 (9th Cir. 2003). The FAC's references to representations occurring "throughout the franchise relationship" do not identify who said what, to whom, when, where, or in what transaction. *See* FAC, ¶¶ 52, 60–61, 92, 117, 140.

Plaintiffs' reliance on *Schnellmann* does not make Rule 9(b) categorically inapplicable to Count II. Opp. at 7. *Schnellmann* identifies the substantive elements





GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

of negligent misrepresentation under South Carolina law; it does not address the federal pleading standard. *See Schnellmann v. Roettger*, 368 S.C. 17, 20–21, 627 S.E.2d 742, 744 (Ct. App. 2006). *Vess*, by contrast, holds that Rule 9(b) applies to fraudulent averments even where fraud is not an essential element of the cause of action. 317 F.3d at 1103–05. If a claim also rests on nonfraudulent conduct, the Court disregards inadequately pleaded fraud allegations and determines whether the remaining allegations state a claim under Rule 8. *Id.* at 1105–06. Here, Count II relies on the same purchasing representations and concealment underlying Count I, including the alleged instruction to Boxwell not to communicate or transact directly with Plaintiffs. FAC ¶¶ 100–104. Those fraud-based allegations fail Rule 9(b) for the reasons above. Even under Rule 8, Count II does not identify which Plaintiff received which allegedly false representation, from whom, or in what transaction. Because South Carolina law requires a false representation "to the plaintiff" and justifiable reliance on that representation, *Schnellmann*, 368 S.C. at 20–21, the FAC's collective allegation that unidentified "officers and regional developers" made unspecified representations to "Plaintiffs" does not plausibly plead those elements. FAC ¶ 101. Count II therefore fails under either standard.

**B. <u>Counts I and II Still Do Not Plead Actionable Post-Sale Misrepresentation or Concealment.</u>**

Plaintiffs insist Counts I and II now rest on post-sale conduct outside the CFIL. Opp. at 8. The Court's prior ruling provides the framework for that argument. The Court held that Counts I and II were preempted to the extent they were premised on the same categories of misrepresentations covered by the CFIL, including representations concerning the proprietary system, LDM revenue, proprietary software, and the financial performance of franchisees under Item 19, and emphasized that the original Complaint failed to distinguish between oral and written misrepresentations. Order at 14–16. To the extent Counts I and II still rest on Item 8 or other FDD representations made in connection with the offer or sale of the

franchises, that ruling controls. To the extent Plaintiffs now rely instead on supposedly distinct post-sale statements or concealment, the FAC does not plead those acts with the necessary facts.

Count I alleges that UFG represented after execution that no alternate sources existed and that purchasing had to route through UFG. FAC ¶¶ 92–95. But it does not identify the Plaintiff, speaker, date, medium, or transaction. Count II similarly attributes unspecified statements to unidentified "officers and regional developers." FAC ¶ 101. Plaintiffs catalogue the elements of their claims, Opp. at 5–8, but alleging that UFG "knew" a statement was false does not supply the missing circumstances of the communication.

The supposed concealment is also contradicted by the written contractual framework. The Agreements expressly permit UFG to designate suppliers, permit UFG or its affiliate itself to be an approved supplier, require franchisees to submit information when proposing an unapproved product or supplier, and state that UFG and its affiliates may retain rebates, markups, and other benefits from franchisee purchases. Ex. A [ECF No. 55-1] §§ 12.1–12.2; 2008 Agreement §§ 13.1–13.2. Plaintiffs' theory that UFG concealed the very existence of an intermediary supply relationship cannot be divorced from those provisions.

Nor does the allegation that a manufacturer sold similar or identical equipment elsewhere convert the contractual purchasing structure into a false statement. A product can be part of a proprietary franchise system without being manufactured in a factory that sells exclusively to the franchisor. And the Item 8 statement that there were no alternate sources of supply must be read in the context of approved sources for required franchise products—not as a representation that no third-party manufacturer anywhere could make or sell comparable goods.

The same problem defeats the alleged duty to disclose. Plaintiffs do not identify a South Carolina rule requiring UFG, after formation of the Agreements, to disclose its acquisition cost, each upstream manufacturer, or every price at which a

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

manufacturer sells similar products to third parties. The Agreements instead expressly contemplate UFG's right to designate sources and retain markups.

Counts I and II therefore remain deficient. Their presale component is governed by the Court's prior ruling; their supposed post-sale component lacks the particularized facts necessary to state a claim.

### C. Counts III and IV Still Do Not Plead a Plausible Breach.

#### 1. The Label "Corporate Salaries" Does Not Plead a Prohibited NAF Expenditure.

Plaintiffs' NAF claim has become more specific, but not more plausible. The FAC alleges that UFG's 2024 financial information recorded $530,861 as corporate salaries paid from the Fund and concludes that all such salaries were necessarily prohibited general operating expenses. FAC ¶¶ 79–80. The Agreement says otherwise.

Section 10.3.1 permits Fund money to pay costs of producing, maintaining, administering, and directing consumer advertising and permits "reasonable costs and expenses" incurred in activities reasonably related to Fund administration. Ex. A [ECF No. 55-1] § 10.3.1; 2008 Agreement § 11.3.1. The 2022 Agreement is even more explicit, extending the exception to salaries of employees who manage marketing agencies, administer the Fund, or directly create marketing materials or tools. FAC ¶ 78.

Accordingly, "salary" is not synonymous with prohibited "general operating expense." The relevant question is what work the compensated employees performed. Yet the FAC alleges nothing about any employee whose salary was charged to the Fund—no identity, position, duties, time allocation, or facts showing the employee performed work unrelated to Fund administration or advertising. Plaintiffs' Opposition suggests those facts are exclusively within UFG's possession. Opp. at 9. But that does not permit the Court to infer a breach from an accounting category that encompasses expenses the Agreement expressly permits.



GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

The conference and NASCAR allegations are even thinner. FAC ¶ 81 asserts that expenditures served vendor relationships or the founder's preferences, but pleads no facts identifying the event, expenditure, amount, recipient, advertising purpose, or lack thereof. Calling an expense personal or unrelated to advertising is a conclusion, not factual content demonstrating that the expenditure falls outside § 10.3.1.

### 2. An Unidentified $800 Differential Does Not Plausibly Show a Noncompetitive Price or Unreasonable Profit.

Count IV relies principally on a single alleged comparison: "one Plaintiff" supposedly purchased identical Boxwell containers for approximately $800 less per container than UFG charged. FAC ¶ 48. The Opposition says the word "identical" resolves comparability. Opp. at 10. It does not.

The contractual promises are to provide equipment at "competitive prices" while permitting UFG and its affiliates to earn a "reasonable profit." Ex. A [ECF No. 55-1] § 12.2; 2008 Agreement § 13.2. Neither term requires UFG to match the lowest price another purchaser might obtain in a separate transaction. And an $800 differential, standing alone, says nothing about the reasonableness of the profit without even the denominator. The FAC does not allege whether the UFG price was; what UFG itself paid; or what percentage margin allegedly resulted.

Nor are the omitted transaction terms uniquely within UFG's knowledge. The unidentified Plaintiff making the alleged direct Boxwell purchase necessarily knows its own purchase date, quantity, price, freight terms, delivery arrangement, specifications, and other conditions. Yet none is pleaded.

Plaintiffs' additional references to trucks, brokers, rental equipment, and long waits likewise do not plead a breach of the pricing promise. *See* FAC ¶¶ 47, 56. They provide no comparative prices, UFG prices, costs, or margins. The FAC therefore pleads a price differential, but not facts from which the Court can plausibly infer that UFG's prices were noncompetitive or its profit unreasonable.



GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**D. Count V Fails Because the Underlying Pricing Claim is Deficient and the Alleged "Fraudulent Act" Is Not Pleaded With Particularity.**

Plaintiffs correctly observe that breach of contract accompanied by a fraudulent act requires a breach, fraudulent intent relating to the breach, and a separate fraudulent act accompanying it. Opp. at 11. But Count V fails at the first and third steps.

First, its alleged breach is exactly Count IV's pricing theory. FAC ¶ 112, 119. If the FAC does not plausibly plead that UFG charged a noncompetitive price or earned an unreasonable profit, there is no underlying breach for Count V to accompany.

Second, Count V identifies the alleged fraudulent act as UFG's concealment of the equipment's "true source," "true market price," and the magnitude of its markup. FAC ¶ 120. But the FAC does not identify any particular act of concealment, speaker, recipient, date, or transaction. The Opposition instead points to alleged vendor instructions not to deal directly with franchisees, Opp. at 11, but those allegations likewise fail to identify who gave the instruction, when, to whom, or which Plaintiff or transaction it affected.

More fundamentally, the FAC does not explain how the alleged concealment is distinct from the pricing breach, particularly where the Agreements disclose required purchasing, markups, supplier benefits, and alternate-supplier approval. Ex. A [ECF No. 55-1] §§ 12.1–12.2. The FAC pleads no separate fraudulent act beyond that contractual purchasing arrangement. Count V should therefore be dismissed.

**E. Section 21.14 Does Not Save Count VI.**

The Opposition confirms that Plaintiffs are using § 21.14's general good-faith language to create duties the Agreement's specific provisions do not impose. Plaintiffs emphasize that § 21.14 states that both parties "shall act reasonably and in

good faith." Opp. at 12. But § 21.14 must be read together with the specific provisions governing the particular rights at issue. Ex. A [ECF No. 55-1] § 21.14.

*Road* defines the limits of the covenant. The South Carolina Supreme Court held that the covenant "cannot create new contractual duties not already expressed or implied in the contract" and "serves only to govern the manner in which parties to a contract enforce their existing contractual rights and carry out their existing contractual duties." *Road, LLC v. Beaufort Cnty.*, 443 S.C. 11, 24, 902 S.E.2d 366, 372 (2024). The court rejected the claim because "[t]he covenant of good faith cannot impose a duty separate from the terms of the contract itself." *Id.* at 26, 902 S.E.2d at 374.

First, Plaintiffs repackage the dismissed StoreSmart theory. The Court held that § 11.5 does not guarantee software functionality or support and "expressly creates obligations imposed on Plaintiffs, not on Defendant." Order [ECF No. 52] at 20. The FAC now invokes §§ 9.2 and 21.14 to challenge the rollout of allegedly defective software. FAC ¶¶ 126–27. But § 9.2 gives UFG the right to modify the System, including by adopting new software, and requires franchisees to accept those changes. Ex. A [ECF No. 55-1] § 9.2. Its reference to expenditures the modification "may reasonably require" does not create the functionality warranty the Court already found absent.

Second, the NAF and pricing theories duplicate Counts III and IV. Section 10.3.1 governs Fund expenditures, and § 12.2 supplies the pricing standard. Section 21.14 cannot turn conduct permitted by those provisions into separate breaches.

Third, the supplier-approval theory omits facts showing any breach of § 12.1. That provision requires a franchisee seeking an unapproved supplier to provide sufficient information, specifications, and samples, and states that UFG need not approve any particular supplier. Ex. A [ECF No. 55-1] § 12.1. Yet the FAC identifies no proposed supplier, proposing Plaintiff, submission, or UFG response.

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Finally, the LDM, territory, and rebate allegations identify no specific contractual duty that § 21.14 can govern as Plaintiffs propose. Instead, the FAC invokes § 21.14's reference to the "intent and purpose" of the Franchise Agreements. FAC ¶¶ 125, 127–28. *Road* makes clear that a contract's purpose cannot create duties its terms do not impose. 443 S.C. at 24–26, 902 S.E.2d at 372–74. Section 21.14 therefore does not supply the missing contractual duties.

**F. <u>Count VII Still Does Not State a CFIL Claim.</u>**

Plaintiffs contend they cured the prior Rule 9(b) problem by identifying which FDD each Plaintiff received. Opp. at 13–14. That addresses one defect, but not the others.

As to Item 1, the FAC alleges that references to a proprietary system and proprietary or custom-built equipment were false because third parties manufactured the equipment and allegedly sold identical products to the public and UFG's competitors. FAC ¶¶ 22–30. That does not follow. A franchise system can incorporate products designed or specified for use in that system even when outside manufacturers fabricate the products or sell other products to other customers. The FAC does not allege what specifications applied to the UNITS products, how the products sold elsewhere were identical in all relevant respects, or why the system as a whole was not proprietary.

The Item 8 theory similarly conflates UFG's approved source with UFG's upstream manufacturers. Plaintiffs' own allegations acknowledge that UFG disclosed its right to derive revenue, retain markups, and receive other benefits from required franchisee purchases. FAC ¶ 37. The Agreements likewise state that UFG and its affiliates may retain "volume rebates, markups, and other benefits." Ex. A [ECF No. 55-1] § 12.1. Plaintiffs do not identify a materially false numerical disclosure tied to a specific Plaintiff's FDD or allege facts showing what consideration was omitted from the figure disclosed in that FDD.

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Plaintiffs' reliance on the existence of upstream manufacturers likewise does not establish falsity of a statement that UFG was the approved source or that there was no alternate approved source of supply. The question is what the FDD actually represented in context, not whether similar products physically existed somewhere in the marketplace.

Item 10 remains speculative. The FAC alleges, on information and belief, an undisclosed financing relationship with Live Oak Bank based on UFG financial statements reflecting lending or lease activity. FAC ¶¶ 35, 38. But it does not allege that Live Oak financed any franchisee purchase, that UFG arranged such financing, or that UFG received consideration for doing so. Nor does it identify any false Item 10 statement made to a particular Plaintiff.

Finally, Plaintiffs' reliance theory cannot ignore the agreements they executed. The written terms expressly disclose required purchasing through approved sources and UFG's right to retain markups and other supplier benefits. Plaintiffs cannot transform disclosed aspects of the arrangement into actionable concealment merely by insisting the disclosure should have included still more detail.

### G. <u>Count VIII Is Barred Because the Franchise Agreements Govern the Alleged LDM Benefit.</u>

Plaintiffs argue that the Agreements do not govern the particular benefit they claim: the value of their self-generated customer leads. Opp. at 16–19. As to So Cal, they acknowledge that § 12.15 governs LDM but argue that it does not address compensation for the lead itself. Id. at 18–19. That distinction does not remove the dispute from the Agreements' subject matter.

*Estate of Taylor v. John Alden Life Insurance Co.* is particularly instructive. There, the insured argued that the insurer had denied benefits based in part on requirements not contained in the policy. 574 F. Supp. 3d 347, 357 (D.S.C. 2021). The court nevertheless rejected unjust enrichment because the dispute was based on the express contract and the insurer's alleged payment obligation was governed by

the policy. *Id.* The court stated the general rule directly: "The existence of an express contract bars a claim for unjust enrichment, quantum meruit, or other quasi-contractual claims." *Id.* (citations omitted).

The same reasoning applies here. Plaintiffs' alleged "benefit" did not arise in some relationship independent of the Franchise Agreements. The alleged leads arose because Plaintiffs operated UNITS franchises, marketed UNITS services under contractual local-advertising requirements, obtained UNITS customers in contractual territories, and then interacted with UFG concerning UNITS long-distance moves. The dispute is over who, within that contractual franchise relationship, was entitled to the economic benefit associated with those customers. Describing that benefit as a "lead" does not take it outside the subject matter of the Agreements.

The Agreements reinforce the point. The 2019 and 2020 Agreements reserve to UFG broad rights concerning the System and alternative channels of distribution and disclaim a franchisee's right to share in proceeds from UFG's reserved activities. Ex. A [ECF No. 55-1] §§ 1.5.3–1.5.5. The 2022 Agreement expressly includes LDM services among UFG's reserved activities. *Id.* § 1.5.3. And So Cal's 2022 Agreement contains a specific Long-Distance Moving provision giving UFG the right to require use of UFG or its designees for LDM services and establishing the payment structure for such moves. *Id.* § 12.15. Those provisions need not use Plaintiffs' preferred word—"lead"—to demonstrate that LDM business and the parties' respective economic rights concerning that business fall within the franchise relationship.

Plaintiffs' argument is weakest as to So Cal. Section 12.15 expressly governs long-distance moving and customer payments. Plaintiffs respond that it governs performance of the move, but not compensation for the "lead." Opp. at 18. That argument closely parallels Estate of Taylor, where the plaintiff argued that the insurer relied on requirements not contained in the policy, but the court nevertheless barred unjust enrichment because the claim arose from the express contract and the obligation to pay benefits was governed by that contract. 574 F. Supp. 3d at 357. The



GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

same reasoning applies here: the relevant question is whether the Agreement governs the parties' rights concerning the LDM transaction, not whether it assigns a separate value to the "lead."

The earlier Agreements do not save the claim either. Plaintiffs emphasize that the word "LDM" does not appear in some earlier versions. Opp. at 17–18. But unjust enrichment is barred when the contract governs the subject matter, not only when it uses the plaintiff's chosen terminology for every factual component. The earlier Agreements govern the franchisees' territories, advertising obligations, services offered through the franchised business, UFG's retained System rights, approved products and services, and the parties' compensation rights. Plaintiffs' LDM customers did not arise outside those Agreements.

Rule 8(d) does not change the substantive rule. Alternative pleading may be appropriate where the existence or enforceability of a contract is genuinely disputed. Here, every Plaintiff affirmatively alleges a valid and enforceable Franchise Agreement and simultaneously invokes those Agreements as the basis for Counts III, IV, and VI. *See* FAC ¶¶ 106, 110, 115, 123. There is no uncertainty about whether contracts exist. Plaintiffs simply want a contractual theory if the Agreements provide the entitlement they seek and an equitable theory if they do not.

**H. <u>Further Leave to Amend Should Be Denied.</u>**

Plaintiffs characterize the FAC as merely their "first amendment" and argue they cannot have repeatedly failed to cure a Rule 8 defect UFG did not previously raise. Opp. at 20–21. But dismissal with prejudice does not depend on Rule 8 alone.

The Court's July 9 Order identified substantive defects claim by claim, including CFIL preemption, the absence of the asserted software duties, the lack of a contractual basis for the NAF claim, the limits of the implied covenant, and Rule 9(b) deficiencies in the CFIL allegations. Order [ECF No. 52] at 13–25. Plaintiffs had the benefit of that reasoning when drafting the FAC.

Under *Zucco Partners, LLC v. Digimarc Corp.*, where a plaintiff has already

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

been given leave to amend, the district court's discretion to deny further leave is "particularly broad," and failure to cure identified deficiencies strongly indicates that no additional facts remain to be pleaded. 552 F.3d 981, 1007 (9th Cir. 2009).

That reasoning applies here. Counts I, II, V, and VII still rely on collective allegations and unidentified communications or transactions. Count VI attempts to revive the rejected software theory through § 21.14, and the remaining defects in Counts VI and VIII are legal, not factual. Further amendment cannot change the governing contract language or South Carolina law.

Plaintiffs' Rule 12(g) point does not alter that conclusion. They do not ask the Court to disregard UFG's Rule 8 argument, Opp. at 20–21, and dismissal with prejudice is independently supported by the defects discussed above. Further amendment would be futile.

## III. CONCLUSION

For the foregoing reasons, UFG respectfully requests that the Court dismiss the First Amended Complaint with prejudice.

Dated: September 18, 2026 GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Clair E. Wischusen*
Calvin E. Davis
Candice S. Nam
Peter G. Siachos (*pro hac vice*)
Clair E. Wischusen (*pro hac vice*)
*Attorneys for Defendant, UNITS Franchising Group, Inc.*

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**CERTIFICATE PURSUANT TO L.R. 11-6.1**

The undersigned, counsel of record for defendant UNITS Franchising Group, Inc., certifies that this brief contains 3,903 words, which with the word limit of L.R. 11-6.1 and the Court's Standing Order.

Dated: September 18, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Clair E. Wischusen*
Calvin E. Davis
Candice S. Nam
Peter G. Siachos (*pro hac vice*)
Clair E. Wischusen (*pro hac vice*)
*Attorneys for Defendant, UNITS Franchising Group, Inc.*

GORDON REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: September 18, 2026 GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Clair E. Wischusen*
Clair E. Wischusen (*pro hac vice*)